# EXHIBIT 32



MARSHALL
GERSTEIN
BORUN LLP

233 South Wacker Drive, 6300 Willis Tower, Chicago, IL 60606-6357  USA
**T** 312.474.6300   **F** 312.474.0448   marshallip.com

Kevin M. Flowers, Ph.D.
(312) 474-6615
kflowers@marshallip.com

April 12, 2010

*Via U.S. Mail and E-Mail*

Nicholas Groombridge, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
nicholas.groombridge@weil.com

Re:    *Life Tech Corp. v. Illumina, Inc.*, Case No. 09-706-RK

Nick:

According to the Court's February 2, 2010 Order, the parties are to exchange lists of proposed claim terms in need of construction no later than today.

Attached is Illumina's list of proposed terms for construction. Defendants' investigation is ongoing, and they reserve the right to modify or supplement this list in response to Plaintiffs' list of proposed terms in need of construction, after further consideration of the Chetverin patents and their file histories, and after receipt of further discovery from Plaintiffs regarding the Chetverin patents-in-suit.

Sincerely,

Kevin M. Flowers

Attachment

cc:    *Via e-mail only*
       Jack B. Blumenfeld, Esq. (jblumenfeld@mnat.com)
       Maryellen Noreika, Esq. (mnoreika@mnat.com)
       Peter Sandel, Esq. (peter.sandel@weil.com)
       Jenny C. Wu, Esq. (jenny.wu@weil.com)
       Margaret J. Sampson (msampson@velaw.com)

SUBJECT TO FED. R. EVID. 408 – FOR DISCUSSION PURPOSES ONLY

**Illumina's list of proposed claim terms for construction**

| Claim term | Patent | Claims |
|---|---|---|
| "exponential" | '478 | all |
| | '698 | all |
| | '568 | all |
| "nucleic acid amplification system" | '478 | all |
| | '698 | 17, 18, 20, 21, 23 |
| "amplification system" | '478 | all |
| | '698 | 1, 2, 3, 6, 12, 15, 16 |
| | '568 | 16 |
| "exponential nucleic acid amplification" | '478 | all |
| | '698 | 17, 18, 20, 21, 23 |
| "a cell-free, enzymatic exponential amplification system" | '698 | 1, 2, 3, 6, 12, 15, 16 |
| "nucleic acid polymerase enzyme system" | '568 | 1, 2, 4, 10 |
| "completely entrapping" | '478 | all |
| | '698 | 17, 18, 20, 21, 23 |
| | '568 | all |
| "matrix" | '478 | all |
| | '698 | 3, 6, 17, 18, 20, 21, 23 |
| | '568 | all |
| "matrix . . . completely entrapping said liquid phase" | '478 | 1, 3, 6, 7, 11, 12, |
| | '698 | all |
| "matrix . . . completely entrapping nucleotide substrates." | '568 | 16 |
| "matrix completely entrapping said amplification system" | '478 | 14, 15, 16 |
| "said matrix completely entrapping said amplification system" | '698 | all |
| "a thin layer . . . completely entrapping said liquid phase" | '568 | 1, 2, 4, 10 |
| "entrapping" | '698 | 1, 2, 3, 6, 12, 15, 16 |
| "entrapping said liquid within solid surfaces comprising a thin layer" | '698 | all |
| "cycling the temperature" | '478 | 14, 15, 16 |
| "cycling the temperature of said first matrix layer repeatedly according to said amplification process" | '478 | 14, 15, 16 |
| "gel-producing solution" | '478 | 14, 15, 16 |
| "mixing with a gel-producing solution a nucleic acid amplification system for said amplification process" | '478 | 14, 15, 16 |

SUBJECT TO FED. R. EVID. 408 – FOR DISCUSSION PURPOSES ONLY

| Claim term | Patent | Claims |
|---|---|---|
| "casting from said gel-producing solution a first solid, water-insoluble gel matrix layer having an average pore size ranging from 5 nm to 100 μm, said matrix completely entrapping said amplification system" | '478 | 14, 15, 16 |
| "polymerase chain reaction" | '478 | 6, 16 |
|  | '698 | 15, 20 |
|  | '568 | 10 |
| "a Polymerase Chain Reaction system" | '478 | 6 |
|  | '698 | 15 20 |
|  | '568 | 10 |
| "a Polymerase Chain Reaction process" | '478 | 16 |
| "immobilized medium" | '478 | 1, 3, 6, 7, 11, 12 |
|  | '698 | 17, 18, 20, 21, 23 |
|  | '568 | 1, 2, 4, 10 |
| "incubating said immobilized medium" | '478 | 1, 3, 6, 7, 11, 12 |
|  | '698 | 17, 18, 20, 21, 23 |
| "incubating said trapped mixture" | '698 | 1, 2, 3, 6, 12, 15, 16 |
| "incubating said immobilized medium containing said distributed molecules" | '478 | 1, 3, 6, 7, 11, 12 |
|  | '698 | 17, 18, 20, 21, 23 |
| "cycling the medium through at least two temperatures" | '478 | 6 |
| "wherein said step (c) comprises cycling the medium through at least 2 temperatures" | '698 | 6 |
| "distributing said aqueous liquid phase in said solid matrix" | '478 | 11 |
| "repeated temperature cycling" | '478 | 14, 15, 16 |
| "liquid mixture" | '698 | 1, 2, 3, 6, 12, 15, 16 |
| "forming a liquid mixture of the sample and said amplification system" | '698 | 1, 2, 3, 6, 12, 15, 16 |
| "the reaction" | '698 | 1, 2, 3, 6, 12, 15, 16 |
| "the synthesized nucleic acid product" | '698 | 1, 2, 3, 6, 12, 15, 16 |
| "wherein copies of said nucleic acid sequence . . . produce separate, detectable colonies of the synthesized nucleic acid product" | '698 | 1, 2, 3, 6, 12, 15, 16 |
| "wherein said step of screening comprises contacting said synthesized nucleic acid product with a labeled oligonucleotide probe and detecting said label" | '698 | 1, 12,  23 |

2

SUBJECT TO FED. R. EVID. 408 – FOR DISCUSSION PURPOSES ONLY

| Claim term | Patent | Claims |
|---|---|---|
| "average distance between the nearest solid surfaces" | '698 | 1, 2, 3, 6, 12, 15, 16 |
| "wherein the average distance between the nearest solid surfaces is smaller than the distance which the synthesized nucleic acid product can migrate by diffusion during the reaction" | '698 | 1, 2, 3, 6, 12, 15, 16 |
| "stable" | '698 | 17, 18, 20, 21, 23 |
| "distributing in said aqueous liquid phase" | '478 | 1, 3, 6, 7, 11, 12 |
|  | '698 | 17, 18, 20, 21, 23 |
| "distributing in said aqueous liquid phase nucleic acid molecules, at least one of which may comprise a template for said amplification system" | '478 | 1, 3, 6, 7, 11, 12 |
|  | '698 | 117, 18, 20, 21, 23 |
| "distributing in said amplification system" | '478 | 14, 15, 16 |
| "distributing in said amplification system nucleic acid molecules, at least one of which may comprise a template for said amplification system" | '478 | 14, 15, 16 |
| "distributed in said liquid mixture" | '698 | 1, 2, 3, 6, 12, 15, 16 |
| "incubating" | '478 | 1, 3, 6, 7, 11, 12 |
|  | '698 | all |
| "said distributed molecules" | '478 | 1, 3, 6, 7, 11, 12 |
| "an aqueous liquid phase that includes a cell-free, enzymatic, exponential nucleic acid amplification system" | '478 | 1, 3, 6, 7, 11, 12 |
|  | '698 | 17, 18, 20, 21, 23 |
| "A method of detecting a nucleic acid sequence in a sample that may contain said sequence" | '698 | all |
| "providing an immobilized medium, said medium including (i) an aqueous liquid phase" | '478 | 1, 3, 6, 7, 11, 12 |
|  | '698 | 17, 18, 20, 21, 23 |
| "incubating said trapped mixture under conditions promoting synthesis of an exponentially amplified nucleic acid product from said nucleic acid sequence" | '698 | 1, 2, 3, 6, 12, 15, 16 |
| "promoting synthesis of an exponentially amplified nucleic acid product by said amplification system" | '478 | 1, 3, 6, 7, 11, 12 |
|  | '698 | 17, 18, 20, 21, 23 |
| "under conditions promoting synthesis of an exponentially amplified nucleic acid product by said amplification system from said at least one template" | '478 | 1, 3, 6, 7, 11, 12 |

SUBJECT TO FED. R. EVID. 408 – FOR DISCUSSION PURPOSES ONLY

| Claim term | Patent | Claims |
|---|---|---|
| "nucleic acid amplification to form at least one separate, detectable colony of said nucleic acid product in said medium" | '478 | 1, 3, 6, 7, 11, 12 |
| | '698 | 17, 18, 20, 21, 23 |
| "A preformed immobilized medium" | '568 | 1, 2, 4, 10 |
| "capable of performing said process" | '568 | 1, 2, 4, 10 |
| "a preformed immobilized medium … comprising an aqueous liquid phase that includes a cell-free nucleic acid polymerase system capable of performing said process" | '568 | 1, 2, 4, 10 |
| "matrix layer has a thickness of 50 µm to 10 mm" | '478 | 15, 16 |
| "said matrix has a thickness of from 1 µm to 10 mm" | '698 | 6 |
| "1 µm to 10 mm in thickness" | '568 | 1, 2, 10 |
| "a thin layer, from 1 µm to 10 mm in thickness" | '568 | 1, 2, 4, 10, 16 |
| "thickness in the range of 50 µm to 1 mm" | '568 | 4 |
| "wherein said thin layer has a thickness in the range of 50 µm to 1 mm" | '568 | 4 |
| "thickness of 0.1 µm to 10 mm" | '568 | 16 |
| "matrix having a thickness of 0.1 µm to 10 mm" | '568 | 16 |
| "wherein step (a) precedes step (b)" | '698 | 21 |
| "incubating said immobilized medium containing said distributed molecules … from said at least one template" | '698 | 17, 18, 20, 21, 23 |

# EXHIBIT 33

GREGORY E. STANTON (CA BAR NO. 203495)
KEVIN M. FLOWERS
THOMAS I. ROSS
JEFFREY H. DEAN
JOHN R. LABBE
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6357
(312) 474-6300
(312) 474-0448 (facsimile)
E-Mail: gstanton@marshallip.com
E-Mail: kflowers@marshallip.com
E-Mail: tross@marshallip.com
E-Mail: jdean@marshallip.com
E-Mail: jlabbe@marshallip.com

Attorneys for ILLUMINA, INC. and
SOLEXA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLERA CORPORATION-APPLIED BIOSYSTEMS GROUP, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ILLUMINA, INC., a Delaware corporation, SOLEXA INC., a Delaware corporation, and STEPHEN C. MACEVICZ, an individual,<br><br>Defendants. | Case No. 07-CV-02845 MEJ<br><br>Magistrate Judge Maria-Elena James<br><br>**ANSWER OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. AND COUNTERCLAIMS OF DEFENDANT SOLEXA, INC.**<br><br>**DEMAND FOR JURY TRIAL** |

Defendants Illumina, Inc. and Solexa, Inc. (collectively, "Illumina") answer the Complaint of Applera Corporation – Applied Biosystems Group ("AB") as follows:

## PARTIES

1.      Applied Biosystems is an operating group of Applera Corporation, a Delaware Corporation.  Applera's principal place of business is in Norwalk, Connecticut, and Applied Biosystems's principal place of business is in Foster City, California.

**ANSWER:**

Illumina is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1.

2.     Applied Biosystems is informed and believes, and on that basis alleges, that defendant Illumina, Inc. ("Illumina") is a Delaware Corporation with its principal place of business in San Diego, California.  AB is further informed and believes that in 2005, Lynx Therapeutics, Inc. ("Lynx") acquired Solexa, and that the combined companies of Lynx and Solexa became known as Solexa.  AB is further informed and believes that effective January 26, 2007, Illumina acquired Solexa, Inc. ("Solexa"), a Delaware Corporation with its principal place of business in Hayward, California.  References to Illumina in this Complaint include Illumina, Solexa, and Lynx.

**ANSWER:**

Illumina admits that it is a Delaware corporation with its principal place of business in San Diego, California.  Illumina admits that in 2005, Lynx Therapeutics, Inc. ("Lynx") acquired Solexa, Inc. ("Solexa") and that the combined companies of Lynx and Solexa became known as Solexa.  Illumina admits that effective January 26, 2007, it acquired Solexa, which is a Delaware corporation with its principal place of business in Hayward, California.  Illumina denies the remaining allegations of paragraph 2.

3.     AB is informed and believes, and on that basis alleges, that defendant Stephen C. Macevicz ("Macevicz") is, and at all relevant times was, a resident of Santa Clara County California.

**ANSWER:**

Illumina is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3.

### JURISDICTION

4.     This is an action for declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202 for the purpose of determining a question of actual controversy between the parties as described herein.

**ANSWER:**

Illumina admits that AB's Complaint purports to state an action for declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

-2-

Illumina denies the remaining allegations of paragraph 4.

5.      This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1338(a) (action arising under an Act of Congress relating to patents), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1367 (supplemental jurisdiction).

**ANSWER:**

Illumina admits that this Court has subject matter jurisdiction over any action arising

under an Act of Congress relating to patents under 28 U.S.C. § 1338(a), that this Court has federal

question subject matter jurisdiction as set forth in 28 U.S.C. § 1331, and that this Court may

assert supplemental jurisdiction as provided in 28 U.S.C. § 1367.  Illumina denies the remaining

allegations of paragraph 5.

## VENUE

6.      Venue is proper in this judicial district under 28 U.S.C. § 1391 (b)–(c) in that AB is informed and believes, and on that basis alleges, that Illumina is subject to personal jurisdiction within the State of California and this judicial district by virtue of, *inter alia*, Illumina's principal place of business in San Diego, California and Solexa's principal place of business in Hayward, California, Illumina and Solexa's regular and systematic business contacts with this judicial district, and Solexa's communications to AB in California.  Illumina accordingly resides within this judicial district for venue purposes.

**ANSWER:**

Illumina admits that this judicial district is a proper venue for this action.

## INTRADISTRICT ASSIGNMENT

7.      Assignment to the San Jose Division is proper because Defendant Stephen Macevicz resides in the County of Santa Clara.

**ANSWER:**

Illumina is without knowledge or information sufficient to form a belief as to the truth of

the allegations of paragraph 7.

## RELATED STATE-COURT ACTION

8.      This case is related to the pending case of *Applera Corporation-Applied Biosystems Group v. Solexa, Inc., Stephen C. Macevicz, and Does 1-10,* filed on or about December 26, 2006 in the Superior Court of California, County of Santa Clara, Case No. 106CV077133 (the "State Court Action").

-3-

**ANSWER:**

Illumina admits the allegations of paragraph 8.

9.      The complaint in the State Court Action alleges, *inter alia*, that Solexa (which was known during much of the relevant time period as Lynx) and Macevicz wrongfully took patents and inventions that belong to AB.

**ANSWER:**

Illumina admits that the State Court Action alleges that Solexa and Macevicz wrongfully took patents and inventions that belong to AB, but Solexa has denied those allegations.

10.      Macevicz is the former Chief Patent counsel for AB.  While he was employed by AB, and without the knowledge or consent of AB, Macevicz applied for patents on inventions that he was obligated to assign to AB.  Under the terms of his employment with AB, he held these inventions, applications, and patents in trust for AB.  Immediately after he left AB, however, and before the patents were issued, Macevicz went to work for Lynx and purported to assign the patents to Lynx.

**ANSWER:**

Illumina admits that at or around the time that Macevicz went to work for Lynx he assigned certain patent applications to Lynx.  Illumina is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 10.

11.      AB brought the State Court Action to recover the patents because Macevicz had no right to assign the applications to Lynx, and Lynx had no right to accept the assignments.  The State Court Action remains pending.  As of the time of the filing of this Complaint, the State Court has not issued a decision regarding the ownership of the patents, and the case is at the beginning of discovery.

**ANSWER:**

Illumina admits that AB brought the State Court Action, that the State Court Action remains pending, and that, at this time, the State Court has not issued a decision regarding the ownership of the patents.  Illumina denies the remaining allegations of paragraph 11.

## FACTUAL BACKGROUND

12.      In Spring, 1992, Macevicz accepted an offer to become patent counsel for AB.  On May 4, 1992, as a condition of his employment by AB, Macevicz signed an Employee Invention Agreement ("Invention Agreement") with AB.  In the Invention Agreement, Macevicz promised to disclose to AB, to hold in trust for the sole right and benefit of AB, and to assign to AB any inventions that he might make while employed by AB.  The only exceptions were inventions that Macevicz could prove were developed entirely on his own time, were developed without the use

-4-

of company resources, and did not relate to the actual or anticipated business of AB or result from work performed by him for AB. Macevicz further promised that if he made any inventions that he believed fell within this exception, he would disclose those inventions to AB and provide evidence to substantiate his belief that the inventions fell within the exception.

**ANSWER:**

Illumina is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12.

13.     On April 17, 1995, while he was still working for AB, Macevicz filed United States Patent Application No. 08/424,663 ("the Application") with the United States Patent and Trademark Office. He filed the Application in his own name. The Application described and covered inventions that were owned by AB pursuant to the Invention Agreement. Macevicz did not disclose the Application, nor did he make any other disclosure required by the Invention Agreement, to AB.

**ANSWER:**

Illumina admits that on April 17, 1995, Macevicz filed Patent Application No. 08/424,663. Illumina is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 13.

14.     Macevicz's Application led to at least three U.S. patents that issued after he left AB: U.S. Patent No 5,750,341 ("the '341 Patent"), U.S. Patent No. 5,969,119 ("the '119 Patent"), and U.S. Patent No. 6,306,597 (the '597 Patent) (collectively, "the Patents"). Copies of the '341 Patent, '119 Patent, and '597 Patent are attached to this Complaint as Exhibits A-C, respectively. AB did not learn about the Application or the Patents until in or around February 2006.

**ANSWER:**

Illumina admits that Macevicz's Application led to the three Patents identified in paragraph 14. Illumina admits that Exhibits A-C of the Complaint appear to be copies of the '341 Patent, the '119 Patent, and the '597 Patent, respectively. Illumina denies the remaining allegations of paragraph 14.

15.     Very soon after he left AB, Macevicz went to work for Lynx. On information and belief, Macevicz purported to assign the Application and the Patents to Lynx, and Lynx purported to accept the assignments, even though they were already assigned to AB under the Invention Agreement. AB was unaware of the purported assignment to Lynx, and was unaware of the Application or the Patents, until in or around February 2006.

-5-

**ANSWER:**

Illumina admits that Macevicz began employment with Lynx in or about September 1995. Illumina admits that Macevicz assigned the Application and the Patents to Lynx. Illumina denies the remaining allegations of paragraph 15.

### GROUNDS FOR DECLARATORY RELIEF

16.     This is in part an action for a declaratory judgment concerning infringement of the '341 Patent, the '119 Patent, and the '597 Patent.

**ANSWER:**

Illumina admits that the Complaint purports to state a claim for a declaratory judgment concerning infringement of the '341 Patent, the '119 Patent, and the '597 Patent. Illumina denies any remaining allegations of paragraph 16.

17.     Illumina/Solexa purports to be the owner by assignment of the Patents.

**ANSWER:**

Illumina admits that it owns the Patents.

18.     AB currently manufactures, sells, and intends to sell in the United States its DNA sequencing products.

**ANSWER:**

Illumina admits the allegations of paragraph 18.

19.     On March 8, 2006, Dr. Tony Smith, the Vice President and Chief Scientific Officer of Solexa, wrote to Dr. Kevin McKernan, attaching a copy of the '597 Patent. Dr. McKernan was at that time the Vice President and Co-Chief Scientific Officer of Agencourt Personal Genomics, which is now owned by AB.

**ANSWER:**

Illumina admits the allegations of paragraph 19.

20.     The March 8, 2006 letter indicated to AB the intention of Solexa to assert the '597 patent, as well as the related '341 and '119 patents, against DNA sequencing products of AB. In the letter Dr. Smith describes a conference at Hilton Head at which he had met with Dr. McKernan. The letter states that Dr. McKernan "made a reference to Solexa patents" at the meeting. But, during this meeting, Dr. McKernan had not made a reference to the Solexa patents listed in the letter. Thus, Agencourt and AB understand that Solexa used the conversation between Drs. McKernan and Smith at the Hilton Head conference as a pretext to put Agencourt on notice of the '597 patent, as well as the related '341 and '119 patents, thereby indicating to

-6-

1    Agencourt/AB that Solexa is contending that Agencourt is engaging or intending to engage in
2    activity for which it needs a license to the '597 patent and its related patents.

3    **ANSWER:**

4         Illumina admits that in the March 8, 2006 letter referenced in paragraph 20, Dr. Smith

5    describes a conference at Hilton Head at which he had met with Dr. McKernan.  Illumina further

6    admits that the letter includes the quoted language "made a reference to Solexa patents."  Illumina

7    denies the remaining allegations of paragraph 20.

8         21.    On or about February 23, 2007, Solexa served "Defendant Solexa, Inc.'s First
9    Request for Production of Documents and Things to Plaintiff Applera Corporation-Applied
     Biosystems Group" in the related State Court action.  In that discovery demand, Solexa demanded
10   "All documents that refer or relate to whether You infringe any claim in the Patents."  Solexa's
     demand defined the "Patents" as the '341 patent, '119 patent, and '597 patent.  This discovery
11   demand confirmed Illumina's intent to assert the '341, '119 and '597 patents against AB.

12   **ANSWER:**

13        Illumina admits that on or about February 23, 2007, Solexa served "Defendant Solexa,

14   Inc.'s First Request for the Production of Documents and Things to Plaintiff Applera Corporation

     – Applied Biosystems Group" in the related State Court action.  Illumina admits that in that

15   discovery request, Solexa, Inc. requested "All documents that refer or relate to whether You

16   infringe any claim in the Patents."  Illumina admits that the discovery request defined the

17   "Patents" as referring to the '341 Patent, the '119 Patent, and the '597 Patent.  Illumina denies the

18   remaining allegations of paragraph 21.

19
20        22.    Solexa's actions have raised issues of infringement of the '341 Patent, '119 Patent,
     and '597 Patent for AB.
21
     **ANSWER:**
22
          Illumina denies the allegations of paragraph 22.
23
          23.    AB is informed and believes, and on that basis alleges, that Solexa contends that
24   the '341 Patent, '119 Patent, and/or '597 Patent are infringed by AB's DNA sequencing products.

25   **ANSWER:**

26        Illumina is without knowledge or information sufficient to form a belief as to what AB

27   was informed and/or believed as of the date the Complaint was filed.

28

                                              -7-

24.     The foregoing facts and circumstances demonstrate that Illumina/Solexa asserts rights under the '341 Patent, '119 Patent, and '597 Patent based on ongoing or planned activity of AB, namely the manufacturing, selling, offering for sale, and/or using of DNA sequencing products. AB contends that it has the right to engage in the accused activity without license. There is therefore an actual, justiciable, Article III case or controversy between the parties with respect to infringement of the Patents. Accordingly, AB is entitled to have a declaration of its rights and further relief as requested herein.

**ANSWER:**

Illumina admits that as of the filing of this Answer and Solexa's Counterclaims, there is an actual, justiciable, Article III case or controversy between the parties with respect to AB's infringement of the Patents. Illumina denies the remaining allegations of paragraph 24.

25.     AB seeks a declaration of its rights to continue making, selling, offering for sale, and using DNA sequencing products without a license and without a risk of being sued for infringement of the Patents.

**ANSWER:**

Illumina admits that AB purports to seek declaratory relief.

26.     The ownership of the Patents is in dispute between AB and Illumina, as indicated by the State Court Action. In the interests of judicial economy, AB herein alleges its causes of action regarding the ownership of the Patents, so that the issues of ownership and infringement can be resolved in the most efficient manner through a consolidated proceeding. Since the parties' positions regarding infringement will be affected by the determination of ownership, the same Court should resolve all issues concerning the Patents, beginning with the issue of ownership.

**ANSWER:**

Illumina admits that AB disputes the ownership of the Patents. Illumina admits that the issue of ownership and infringement of the Patents should be resolved in the most efficient manner through a consolidated proceeding. Illumina agrees with AB that the issues of ownership and infringement should be determined in this Court. Illumina denies the remaining allegations of paragraph 26.

### FIRST CAUSE OF ACTION
### (Breach of Contract; Against Macevicz)

27.     AB incorporates by reference paragraphs 1 through 26 above.

-8-

1  **ANSWER:**

2      Illumina incorporates by reference its answers to paragraphs 1 through 26 above.

3      28.     The Invention Agreement is a valid and enforceable agreement between Macevicz
4  and AB.

   **ANSWER:**
5
6      This cause of action is not directed against Illumina, and Illumina is without knowledge or

7  information sufficient to form a belief as to the truth of the allegations of paragraph 28.

8      29.     Macevicz breached the terms of the Invention Agreement by, among other things,
   failing to disclose the inventions to AB, applying for patents on the inventions in his own name,
9  and purporting to assign the inventions and patents to Lynx.

10 **ANSWER:**

11     This cause of action is not directed against Illumina, and Illumina is without knowledge or

12 information sufficient to form a belief as to the truth of the allegations of paragraph 29.

13     30.     AB has been harmed by Macevicz's various breaches of the Invention Agreement
   in ways that cannot be fully compensated by monetary damages.  AB is therefore entitled to
14 injunctive relief including, among other things, specific enforcement of Macevicz's obligations
   under the Invention Agreement.
15
16 **ANSWER:**

17     This cause of action is not directed against Illumina, and Illumina denies the allegations of

18 paragraph 30.

19                    **SECOND CAUSE OF ACTION**
                 **(Interference With Contract; Against All Defendants)**
20
21     31.     AB incorporates by reference paragraphs 1 through 30 above.

22 **ANSWER:**

23     Illumina incorporates by reference its answers to paragraphs 1 through 30 above.

24     32.     On information and belief, Lynx knew that Macevicz had a contractual duty to
   disclose and assign the Application and Patents to AB.  Lynx also knew that Macevicz had
25 worked for AB prior to working for Lynx, and that the Application and Patents were within AB's
   scope of business.  Lynx nonetheless accepted the purported assignment of the Application and
26 Patents from Macevicz, and assisted Macevicz in violating his contractual obligations to AB by
   failing to disclose, hold in trust for, and assign the Application and Patents to AB.
27 Illumina/Solexa has adopted, ratified and benefited from the wrongful conduct of Macevicz and
28 Lynx.

                                  -9-

**ANSWER:**

Illumina admits that Lynx knew that Macevicz had worked for AB prior to working for Lynx. Illumina denies the remaining allegations of paragraph 32.

33.    AB has been damaged as a result of Illumina's interference with the Invention Agreement between Macevicz and AB, in an amount to be proven at trial. Illumina's conduct was intentional, willful, and malicious, thereby justifying an award of punitive damages. AB has also been damaged in ways that cannot be compensated by monetary damages, and is therefore entitled to injunctive relief.

**ANSWER:**

Illumina denies the allegations of paragraph 33.

**THIRD CAUSE OF ACTION**
**(Breach of Fiduciary Duty; Against All Defendants)**

34.    AB incorporates by reference paragraphs 1 through 33 above.

**ANSWER:**

Illumina incorporates by reference its answers to paragraphs 1 through 33 above.

35.    As AB's chief patent counsel, Macevicz owed to AB fiduciary duties of utmost good faith and honesty, including duties to protect AB's business and interests with respect to inventions, patents, intellectual property, and other corporate opportunities, and not to allow those opportunities to be used by others for their own benefit. Macevicz also owed fiduciary duties to AB under the Invention Agreement, pursuant to which he held inventions in trust for the sole right and benefit of AB.

**ANSWER:**

This cause of action cannot properly be directed against Illumina, and Illumina is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 35.

36.    Macevicz breached fiduciary duties owed to AB by, among other things, failing to disclose the inventions to AB, applying for patents on the inventions in his own name, and purporting to assign the inventions and patents to Lynx.

**ANSWER:**

This cause of action cannot properly be directed against Illumina, and Illumina denies the allegations of paragraph 36.

-10-

37.     On information and belief, Lynx knew that Macevicz was AB's chief patent counsel, held the inventions and patents in trust for AB, and owed fiduciary duties to AB. Lynx aided and abetted Macevicz in violating his fiduciary duties to AB by encouraging and accepting Macevicz's purported assignment of the Application and Patents to Lynx. Illumina/Solexa has adopted, ratified and benefited from the wrongful conduct of Macevicz and Lynx.

**ANSWER:**

This cause of action cannot properly be directed against Illumina, and Illumina denies the

allegations of paragraph 37.

38.     AB has been damaged as a result of Illumina's aiding and abetting of Macevicz's breaches of fiduciary duties owed to AB, in an amount to be proved at trial. Illumina's conduct was intentional, willful, and malicious, thereby justifying an award of punitive damages. AB has also been damaged by Macevicz's breaches of fiduciary duties, and Illumina's aiding and abetting thereof, in ways that cannot be fully compensated by monetary damages, and is therefore entitled to injunctive relief.

**ANSWER:**

This cause of action cannot properly be directed against Illumina, and Illumina denies the

allegations of paragraph 38.

**FOURTH CAUSE OF ACTION**
**(Constructive Fraud; Against All Defendants)**

39.     AB incorporates by reference paragraphs 1 through 38 above.

**ANSWER:**

Illumina incorporates by reference its answers to paragraphs 1 through 38 above.

40.     As AB's chief patent counsel, Macevicz owed to AB fiduciary duties of utmost good faith and honesty, including duties to protect AB's business and interests with respect to inventions, patents, intellectual property, and other corporate opportunities, and not to allow those opportunities to be used by others for their own benefit. Macevicz also owed fiduciary duties to AB under the Invention Agreement, pursuant to which he held inventions in trust for the sole right and benefit of AB.

**ANSWER:**

Illumina is without knowledge or information sufficient to form a belief as to the truth of

the allegations of paragraph 40 relating to Macevicz's fiduciary duties to AB. Illumina denies

that Macevicz had any "fiduciary duties" to AB under the Invention Agreement.

-11-

41.     Macevicz breached fiduciary duties owed to AB by, among other things, failing to disclose the inventions to AB, applying for patents on the inventions in his own name, and purporting to assign the inventions and patents to Lynx.

**ANSWER:**

Illumina denies the allegations of paragraph 41.

42.     On information and belief, Lynx knew that Macevicz was AB's chief patent counsel, held the inventions and patents in trust for AB, and owed fiduciary duties to AB.  Lynx aided and abetted Macevicz in violating his fiduciary duties to AB by encouraging and accepting Macevicz's purported assignment of the Application and Patents to Lynx.

**ANSWER:**

Illumina admits that Lynx knew that Macevicz was employed as a patent attorney at AB.

Illumina denies the remaining allegations of paragraph 42.

43.     On information and belief, Macevicz's breaches of fiduciary duties provided advantages to him, and to Lynx claiming under him, by misleading AB to its prejudice.  These breaches constitute constructive fraud under the common law and according to statute, including California Civil Code section 1573.

**ANSWER:**

Illumina denies the allegations of paragraph 43.

44.     On information and belief, Illumina/Solexa has adopted and ratified the wrongful conduct of Macevicz and Lynx, and Illumina's aiding and abetting of Macevicz's breaches of fiduciary duties provided advantages to Illumina, by misleading AB to its prejudice.  These breaches constitute constructive fraud under the common law and according to statute, including California Civil Code section 1573.

**ANSWER:**

Illumina denies the allegations of paragraph 44.

45.     AB has been damaged as a result of defendants' constructive fraud, in an amount to be proven at trial.  Illumina's conduct was intentional, willful, and malicious, thereby justifying an award of punitive damages.  AB has also been damaged by defendants' constructive fraud in ways that cannot be fully compensated by monetary damages, and is therefore entitled to injunctive relief.

**ANSWER:**

Illumina denies the allegations of paragraph 45.

-12-

**FIFTH CAUSE OF ACTION**
**(Conversion; Against All Defendants)**

46.     AB incorporates by reference paragraphs 1 through 45 above.

**ANSWER:**

Illumina incorporates by reference its answers to paragraphs 1 through 45 above.

47.     AB owned and continues to own the Application and the Patents.  Without AB's consent, Lynx intentionally took possession of the Application and the Patents.

**ANSWER:**

Illumina admits that Lynx took possession of the Application and the Patents.  Illumina denies the remaining allegations of paragraph 47.

48.     Lynx knew or should have known that Macevicz submitted the Application while he was working for AB, and that the subject matter of the Application and the Patents related to AB's business.  Lynx could not reasonably have believed that Macevicz had authority to assign the Application and the Patents to Lynx.  Illumina/Solexa has adopted, ratified and benefited from the wrongful conduct of Macevicz and Lynx.

**ANSWER:**

Illumina admits that Lynx knew that Macevicz filed the Application before he terminated his employment with AB.  Illumina denies the remaining allegations of paragraph 48.

49.     AB has been harmed by defendants' conduct and is entitled to recover from defendants the actual damages sustained by AB as a result of the defendants' wrongful acts as described in this Complaint.  The amount of these damages cannot be determined at this time. AB is further entitled to the return of the Patents, and is also entitled to a constructive trust over the Patents and income derived therefrom.

**ANSWER:**

Illumina denies the allegations of paragraph 49.

**SIXTH CAUSE OF ACTION**
**(Imposition of Constructive Trust; Against All Defendants)**

50.     AB incorporates by reference paragraphs 1 through 49 above.

**ANSWER:**

Illumina incorporates by reference its answers to paragraphs 1 through 49 above.

51.     Under the Invention Agreement, Macevicz holds and held the Application and the Patents in trust for AB.  Although Macevicz purported to assign the Application and the Patents

-13-

to Lynx, Macevicz had no right to make that assignment.  Lynx knew, or should have known, that Macevicz had no right to make the assignment.  Illumina/Solexa has adopted, ratified and benefited from the wrongful conduct of Macevicz and Lynx.

**ANSWER:**

Illumina denies the allegations of paragraph 51.

52.     Because of the fraudulent and otherwise wrongful manner in which Illumina obtained its purported right, claim or interest in and to the Application and the Patents, Illumina has no legal or equitable right, claim or interest to the Application or the Patents, or any income or benefits derived from them.  Illumina is an involuntary trustee holding the Application and the Patents and any profits or income therefrom in constructive trust for AB, with the duty to convey the same to AB.

**ANSWER:**

Illumina denies the allegations of paragraph 52.

### SEVENTH CAUSE OF ACTION
### (Unfair Competition; Against Solexa and Illumina)

53.     AB incorporates by reference paragraphs 1 through 52 above.

**ANSWER:**

Illumina incorporates by reference its answers to paragraphs 1 through 52 above.

54.     Solexa has brought the Patents to the attention of third parties as if it were the legitimate assignee and owner of the Patents, and has acted in all respects as if it were the proper assignee and owner of the Patents.  However, Solexa is not the proper assignee or owner of the Patents.

**ANSWER:**

Illumina admits that Solexa owns the Patents and has acted accordingly.  Illumina denies

the remaining allegations of paragraph 54.

55.     Solexa's improper receipt of the Application and the Patents, and improper representation of ownership of the Patents, constitutes unfair competition under the common law and according to statute, including California Business and Professions Code section 17200 *et seq.* Illumina has adopted, ratified and benefited from the wrongful conduct of Solexa.

**ANSWER:**

Illumina denies the allegations of paragraph 55.

56.     As a result of Illumina and Solexa's acts of unfair competition, AB has been damaged by, among other things, the cost of this action and other measures made necessary to recover the Patents and otherwise remedy Illumina and Solexa's wrongdoing.

-14-

**ANSWER:**

Illumina denies the allegations of paragraph 56.

## EIGHTH CAUSE OF ACTION
### (Declaratory Judgment Regarding Infringement of '341 Patent, '119 Patent, and '597 Patent; Against All Defendants)

57.     AB incorporates by reference paragraphs 1 through 56 above.

**ANSWER:**

Illumina incorporates by reference its answers to paragraphs 1 through 56 above.

58.     The parties require declaratory relief regarding infringement of the '341, '119, and '597 Patents.

**ANSWER:**

Illumina admits that the parties are asking this Court to decide the issue of infringement of the '341, '119, and '597 Patents.  Illumina denies the remaining allegations of paragraph 58.

59.     This judicial declaration is necessary and appropriate in order that AB may ascertain its rights and duties with respect to the Patents.

**ANSWER:**

Illumina denies the allegations of paragraph 59.

## ADDITIONAL DEFENSES

1.     AB is barred from relief by reason of the provisions of California Labor Code Section 2870.

2.     Some or all of the relief requested by AB is barred by the bona-fide-purchaser-for-value rule.

3.     Some or all of the relief requested by AB is barred by the doctrine of laches.

4.     Some or all of the relief requested by AB is barred by the doctrine of equitable estoppel.

5.     Some or all of the relief requested by AB is barred by the doctrine of waiver.

6.     Some or all of the relief requested by AB is barred by the doctrine of unclean hands.

-15-

7.      Some or all of the relief requested by AB is barred by the applicable statute(s) of limitations.

8.      Some or all of the relief requested by AB is barred by the doctrine of privilege.

### SOLEXA, INC.'S COUNTERCLAIMS AGAINST APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP

For its counterclaims against Applera Corporation – Applied Biosystems Group ("AB"), Solexa, Inc. ("Solexa") states as follows:

### Nature of the Case

1.      This is an action for patent infringement arising under the United States Patent Act, 35 U.S.C. Title 35.

### Parties

2.      Counter-plaintiff Solexa is a Delaware corporation with its principal place of business in Hayward, California.

3.      Upon information and belief, Solexa alleges that AB is an operating group of Applera Corporation, a Delaware Corporation with a principal place of business in Norwalk, Connecticut.  Upon information and belief, AB's principal place of business is in Foster City, California.

### Jurisdiction and Venue

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

5.      This Court has personal jurisdiction over AB, and venue is proper in this district, because AB has consented thereto by filing the underlying action against Solexa.

### COUNTERCLAIM I
### INFRINGEMENT OF
### U.S. PATENT NO. 5,750,341

6.      Solexa incorporates each of the allegations of paragraphs 1-5 of this counterclaim as if fully restated herein.

-16-

7.     United States Patent No. 5,750,341, entitled "DNA Sequencing by Parallel Oligonucleotide Extensions" (hereinafter, the "'341 Patent," a copy of which is attached hereto as Exhibit A), was duly and legally issued on May 12, 1998.

8.     Solexa is the owner of all right, title, and interest in the '341 Patent.

9.     On information and belief, AB has been and still is making, using, selling, and/or offering for sale DNA sequencing products that infringe, directly, indirectly, contributorily, and/or by inducement, the claims of the '341 Patent, and will continue to do so unless enjoined by this Court.

10.    Solexa has suffered and continues to suffer damages as a result of AB's infringement of the claims of the '341 Patent.

11.    Solexa will suffer irreparable harm due to AB's continuing infringement of the '341 Patent, and Solexa has no adequate remedy at law for this continuing infringement.

12.    AB will continue to infringe the '341 Patent and irreparably harm Solexa unless and until enjoined by this Court.

13.    AB has had actual knowledge of the '341 Patent since at least as early as February 2006.

14.    Under the circumstances, and on further information and belief, AB's infringement of the '341 Patent has been and continues to be willful.

**COUNTERCLAIM II**
**INFRINGEMENT OF**
**U.S. PATENT NO. 5,969,119**

15.    Solexa incorporates each of the allegations of paragraphs 1-14 of this counterclaim as if fully restated herein.

16.    United States Patent No. 5,969,119, entitled "DNA Sequencing by Parallel Oligonucleotide Extensions" (hereinafter, the "'119 Patent," a copy of which is attached hereto as Exhibit B), was duly and legally issued on October 19, 1999.

17.    Solexa is the owner of all right, title, and interest in the '119 Patent.

-17-

18.     On information and belief, AB has been and still is making, using, selling, and/or offering for sale DNA sequencing products that infringe, directly, indirectly, contributorily, and/or by inducement, the claims of the '119 Patent, and will continue to do so unless enjoined by this Court.

19.     Solexa has suffered and continues to suffer damages as a result of AB's infringement of the claims of the '119 Patent.

20.     Solexa will suffer irreparable harm due to AB's continuing infringement of the '119 Patent, and Solexa has no adequate remedy at law for this continuing infringement.

21.     AB will continue to infringe the '119 Patent and irreparably harm Solexa unless and until enjoined by this Court.

22.     AB has had actual knowledge of the '119 Patent since at least as early as February 2006.

23.     Under the circumstances, and on further information and belief, AB's infringement of the '119 Patent has been and continues to be willful.

**COUNTERCLAIM III**
**INFRINGEMENT OF**
**U.S. PATENT NO. 6,306,597**

24.     Solexa incorporates each of the allegations of paragraphs 1-23 of this counterclaim as if fully restated herein.

25.     United States Patent No. 6,306,597, entitled "DNA Sequencing by Parallel Oligonucleotide Extensions" (hereinafter, the "'597 Patent," a copy of which is attached hereto as Exhibit C), was duly and legally issued on October 23, 2001.

26.     Solexa is the owner of all right, title, and interest in the '597 Patent.

27.     On information and belief, AB has been and still is making, using, selling, and/or offering for sale DNA sequencing products that infringe, directly, indirectly, contributorily, and/or by inducement, the claims of the '597 Patent, and will continue to do so unless enjoined by this Court.

-18-

28.     Solexa has suffered and continues to suffer damages as a result of AB's infringement of the claims of the '597 Patent.

29.     Solexa will suffer irreparable harm due to AB's continuing infringement of the '597 Patent, and Solexa has no adequate remedy at law for this continuing infringement.

30.     AB will continue to infringe the '597 Patent and irreparably harm Solexa unless and until enjoined by this Court.

31.     AB has had actual knowledge of the '597 Patent since at least as early as February 2006.

32.     Under the circumstances, and on further information and belief, AB's infringement of the '597 Patent has been and continues to be willful.

### Prayer for Relief

WHEREFORE, Illumina, Inc. and Solexa, Inc. pray that this honorable Court enter judgment in their favor and against AB as follows:

A.     Denying AB all the relief it seeks in its Complaint;

B.     Permanently enjoining AB, its subsidiaries, agents, officers, employees, directors, licensees, servants, successors, assigns and all others acting in privity or in concert with it, from infringing, actively inducing infringement, or contributing to the infringement of the '341 Patent, the '119 Patent, and the '597 Patent;

C.     Awarding Solexa damages adequate to compensate it for the foregoing infringement;

D.     Finding that this is an exceptional case under 35 U.S.C. § 285 and ordering AB to reimburse Solexa and Illumina for their attorneys' fees and costs incurred in prosecuting this action; and

E.     Awarding Solexa and Illumina such other and further relief as this Court deems just and reasonable under the circumstances.

-19-

1    **DEMAND FOR JURY TRIAL**

2        Illumina, Inc. and Solexa, Inc. hereby demand trial by jury of all issues properly so triable.

3

4    Dated:  August 13, 2007                    Respectfully submitted,

5                                                 s/ Gregory E. Stanton
                                              GREGORY E. STANTON (CA BAR NO. 203495)
6                                             KEVIN M. FLOWERS
                                              THOMAS I. ROSS
7                                             JEFFREY H. DEAN
                                              JOHN R. LABBE
8                                             MARSHALL, GERSTEIN & BORUN LLP
9                                             6300 Sears Tower
                                              233 South Wacker Drive
10                                            Chicago, IL 60606-6357
                                              (312) 474-6300
11                                            (312) 474-0448 (facsimile)
                                              E-Mail: gstanton@marshallip.com
12                                            E-Mail: kflowers@marshallip.com
                                              E-Mail: tross@marshallip.com
13                                            E-Mail: jdean@marshallip.com
                                              E-Mail: jlabbe@marshallip.com
14

15                                            Attorneys for ILLUMINA, INC. and
                                              SOLEXA, INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

-20-

ANSWER OF DEFENDANTS ILLUMINA AND SOLEXA AND COUNTERCLAIMS OF DEFENDANT SOLEXA

# EXHIBIT 34

1  KEVIN M. FLOWERS (admitted *pro hac vice*)
   THOMAS I. ROSS (admitted *pro hac vice*)
2  JEFFREY H. DEAN (admitted *pro hac vice*)
   JOHN R. LABBE (admitted *pro hac vice*)
3  CULLEN N. PENDLETON (admitted *pro hac vice*)
   MARSHALL, GERSTEIN & BORUN LLP
4  6300 Sears Tower
   233 South Wacker Drive
5  Chicago, IL 60606-6357
   (312) 474-6300
6  (312) 474-0448 (facsimile)
   E-Mail: kflowers@marshallip.com
7  E-Mail: tross@marshallip.com
   E-Mail: jdean@marshallip.com
8  E-Mail: jlabbe@marshallip.com
   E-Mail: cpendleton@marshallip.com
9
   Attorneys for Defendant
10 SOLEXA, INC.

11                   UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                     SAN FRANCISCO DIVISION

14
   APPLERA CORPORATION --APPLIED          )
15 BIOSYSTEMS GROUP, a Delaware corpora-  )  Case No. 07-CV-02845 WHA
   tion,                                  )
16          Plaintiff/Counterdefendant,   )  Judge William H. Alsup
                                          )
17      v.                                )  **SOLEXA, INC.'S FIRST SET OF INTER-**
                                          )  **ROGATORIES TO APPLERA CORPO-**
18 ILLUMINA, INC., a Delaware corporation,)  **RATION – APPLIED BIOSYSTEMS**
   SOLEXA INC., a Delaware corporation, and)  **GROUP (NOS. 1-18)**
19 STEPHEN C. MACEVICZ, an individual,    )
                                          )
20          Defendants/Counterclaimants.  )
                                          )
21

22      PROPOUNDING PARTY:        Solexa, Inc.

23      RESPONDING PARTY:         Applera Corporation – Applied Biosystems Group

24      SET NUMBER:               One

25         Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Solexa, Inc.

26 ("Solexa") requests that Plaintiff Applera Corporation – Applied Biosystems Group ("AB") re-

27 spond to the following interrogatories in writing and under oath within thirty (30) days of service,

28 in accordance with the definitions and instructions below.

**DEFINITIONS AND INSTRUCTIONS**

1.     As used herein, "You," "Your," "Yourself," "Applied Biosystems," or "AB" means the Plaintiff and Counterclaim Defendant in this case, namely, Applera Corporation – Applied Biosystems Group, and all of its parents, subsidiaries, affiliates, predecessors-in-interest, and successors, including, but not limited to, Agencourt Personal Genomics.

2.     As used herein, "Solexa" means Solexa, Inc., and all of its officers, directors, agents, employees, representatives, predecessors, and successors, including Lynx Therapeutics, Inc.

3.     As used herein, "Macevicz" means Stephen C. Macevicz, an individual and named defendant in this action.

4.     As used herein, "Agencourt" means Agencourt Personal Genomics, a privately-held company acquired by You in 2006, and all present and former officers, directors, agents, employees, representatives, attorneys and accountants thereof.

5.     As used herein, "Patents" means one or more of U.S. Patent No. 5,750,341, U.S. Patent No. 5,969,119, and U.S. Patent No. 6,306,597.

6.     As used herein, "person" means an individual, sole proprietorship, partnership, firm, corporation, association, governmental agency, or any other organization or entity.

7.     As used herein, "document" shall have the broadest possible meaning pursuant to Fed. R. Civ. P. 34(a) and includes, without limitation, documents which may exist only in electronic form.  A draft or non-identical copy is a separate document within the meaning of this term.

8.     As used herein, "identify" or "identification" when used in reference to:

       (a)     an individual, means to state his or her full name, present or last known residential and business addresses and telephone number, and present or last known position and/or business affiliation;

       (b)     a proprietorship, partnership, firm, corporation, association, governmental agency, or other organization or entity, means to state its full name, present or last known address and telephone number of its principal place of business;

-2-

1         (c)      a product, means to state the product number, model number, SKU

2   number, serial number, type number, part number, trade name, or other designa-

3   tion customarily used in the trade to designate such a product and to distinguish it

4   from others made or sold by or on behalf of the same or different producer;

5         (d)      a document, means to state the document's production number in

6   this case, and, to the extent known, the type of document and its subject matter, the

7   date, author(s) and recipient(s) of the document, the person(s) currently having

8   possession, custody or control of the document, its production number in this case,

9   and the identifying or descriptive code number, file number, title, or label of the

10  document;

11        (e)      a communication, means to state its date and location(s), the type of

12  communication (*e.g.*, meeting, letter, e-mail, *etc.*), the person(s) who participated

13  in it or who was or were present during any part of it or who have knowledge

14  about it, and the subject matter of the communication.

15        9.     As used herein, "communication" means any exchange or transfer of information

16  between two or more persons or entities, whether written, oral, or in any other form, including

17  electronic forms such as e-mail.

18        10.    As used herein, "Complaint" means Your First Amended Complaint filed in this

19  action on November 8, 2007.

20        11.    If you claim any privilege or immunity with respect to any information called for

21  by an interrogatory, please state the type of privilege or immunity claimed and the specific basis

22  for the claim of privilege or immunity, and identify any document, communication, or other item

23  to which you claim a privilege or immunity with sufficient specificity to permit a determination

24  by the Court of the propriety of such claim.  Please answer the interrogatory to the extent it calls

25  for information to which you do not claim a privilege or immunity.

26

27

28

**INTERROGATORIES**

1.       State in detail the complete factual basis for Your Second Cause of Action for Interference with Contract against Solexa, including the identification of each witness on whose testimony, and each document or thing containing information on which, You may rely to support Your claim, and the nature of that testimony and/or information.

2.       State in detail the complete factual basis for Your Third Cause of Action for Breach of Fiduciary Duty against Solexa, including the identification of each witness on whose testimony, and each document or thing containing information on which, You may rely to support Your claim, and the nature of that testimony and/or information.

3.       State in detail the complete factual basis for Your Fourth Cause of Action for Constructive Fraud against Solexa, including the identification of each witness on whose testimony, and each document or thing containing information on which, You may rely to support Your claim, and the nature of that testimony and/or information.

4.       State in detail the complete factual basis for Your Fifth Cause of Action for Conversion against Solexa, including the identification of each witness on whose testimony, and each document or thing containing information on which, You may rely to support Your claim, and the nature of that testimony and/or information.

5.       State in detail the complete factual basis for Your Sixth Cause of Action for Imposition of Constructive Trust against Solexa, including the identification of each witness on whose testimony, and each document or thing containing information on which, You may rely to support Your claim, and the nature of that testimony and/or information.

-4-

6.      State in detail the complete factual basis for Your Seventh Cause of Action for Unfair Competition against Solexa, including the identification of each witness on whose testimony, and each document or thing containing information on which, You may rely to support Your claim, and the nature of that testimony and/or information.

7.      Identify all products that You have made or make, have sold or sell, or have offered or currently offer for sale that comprise, constitute or relate to Your SOLiD™ System including any of its components, systems, subsystems, or reagents, including oligonucleotides and probes.  A complete response to this interrogatory will include the name and product numbers of any such products, identification of the sequencing method(s) employed in using each product, and the associated equipment, reagents, or other materials that You have made, make, have sold, sell, have offered or currently offer for sale for use with any such products.

8.      Describe the sales or leasing terms for all products identified in response to Interrogatory Number 7.  A complete response to this interrogatory will include identification of the first sale or lease of any such products, a list of purchaser(s) or lessor(s) of any such product(s), the person(s) who initiated any sale or lease, the person(s) monitoring any customer's use of any such product(s), and the person(s) involved in marketing any responsive products.

9.      Identify each customer and prospective customer to whom Your agents, officers, directors, salespersons, contractors, or employees have provided or arranged to provide any materials or documentation referring or relating to Your SOLiD™ System.

10.     For each customer and prospective customer identified in response to Interrogatory Number 9, identify the specific materials provided to each, the name(s) of the person(s) providing the materials, and the date each such material was provided.

11.     Identify all persons or entities that have contracted to purchase or have purchased Your SOLiD™ System or any of its components, systems, subsystems, or reagents, including oligonucleotides and probes.

12.     If you contend that the use of Your SOLiD™ System does not infringe any asserted claim in the Patents, set forth in detail, on an element-by-element basis, each basis for your contention that the use of Your SOLiD™ System has not, does not, or will not infringe each such element, either literally or under the doctrine of equivalents, specifically identifying each element allegedly not infringed by the use of Your SOLiD™ System, the facts, documents, and other evidence upon which you may rely in support of your contention, and the three person(s) associated with You who are most knowledgeable concerning such facts, documents, and other evidence.

13.     State in detail how and when You first became aware of the Patents or U.S. Patent Application No. 08/424,663.  A complete response to this interrogatory will include identification, separately for each patent and application, of the person(s) employed by or associated with You who first acquired awareness of the Patents or U.S. Patent Application No. 08/424,663, the circumstances under which each such person acquired awareness, all reasons that You did not acquire such awareness at any earlier time, and all reasons why You did not, substantially contemporaneously with Your acquiring that awareness, bring an action seeking the remedies set out in Your Complaint in this lawsuit, including the identification of each witness on whose testimony, and each document or thing containing information on which, You may rely to support Your answer to this interrogatory, and the nature of that testimony and/or information.

14.     Identify each agreement by which You obtained or granted any right or immunity under any patent claiming subject matter relating to DNA sequencing.

15.     Identify every oral and written opinion or other communication (including opinions of counsel) that refers or relates to the validity or invalidity of any of the Patents, the enforceability or unenforceability of any of the Patents, and/or whether the use of Your SOLiD™ System or any related system infringes or would infringe any of the Patents.

16.     State in detail the complete factual basis for Your contention in Your Complaint that You have been damaged financially as a result of the acts of which You complain.  A complete response to this interrogatory will include the amount of such damage, the component parts of such damage (e.g., lost profits, royalties, detrimental economic reliance), and the method of calculation for each, and the identification of each witness on whose testimony, and each document or thing containing information on which, You may rely to support Your answer to this interrogatory, and the nature of that testimony and/or information.

17.     State in detail the complete factual basis for Your contention in Your Complaint that Solexa's alleged conduct was intentional, willful, and/or malicious.  A complete response to this interrogatory will include identification of each witness on whose testimony, and each document or thing containing information on which, You may rely to support Your answer to this interrogatory, and the nature of that testimony and/or information.

18.     Describe in detail the product market in which Your SOLiD™ System competes, including identification of competitor products and their estimated share of the market, identification of customers by type of product use, identification of price considerations or functional needs, identification of competition differences and similarities, and identification of all documents evidencing Your analysis of the products market.

1

DATED:  January 29, 2008

2

3

_____
KEVIN M. FLOWERS (admitted *pro hac vice*)
THOMAS I. ROSS (admitted *pro hac vice*)
JEFFREY H. DEAN (admitted *pro hac vice*)
JOHN R. LABBE (admitted *pro hac vice*)
CULLEN N. PENDLETON (admitted *pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6357
(312) 474-6300
(312) 474-0448 (facsimile)
E-Mail: kflowers@marshallip.com
E-Mail: tross@marshallip.com
E-Mail: jdean@marshallip.com
E-Mail: jlabbe@marshallip.com
E-Mail: cpendleton@marshallip.com

Attorneys for Defendant
SOLEXA, INC.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SOLEXA'S FIRST SET OF INTERROGATORIES TO APPLERA – APPLIED BIOSYSTEMS GROUP**

1

**PROOF OF SERVICE**

2

I am an attorney, and on January 29, 2008, I caused

3

**SOLEXA, INC.'S FIRST SET OF INTERROGATORIES TO APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP (NOS. 1-18)**

4

5

to be served via electronic mail by electronically mailing a true and correct copy through Marshall, Gerstein & Borun LLP's electronic mail system to the e-mail addresses set forth below, and via First Class U.S. Mail, postage prepaid, deposited at 233 South Wacker Drive, Chicago, Illinois upon:

6

7

**COUNSEL FOR PLAINTIFF:**

| | |
|---|---|
| BRYAN WILSON | DAVID C. DOYLE |
| DARA TABESH | STEVEN E. COMER |
| ERIC C. PAI | BRIAN M. KRAMER |
| MORRISON & FOERSTER LLP | MORRISON & FOERSTER LLP |
| 755 Page Mill Road | 12531 High Bluff Drive, Suite 100 |
| Palo Alto, CA 94304-1018 | San Diego, CA 92130-2040 |
| E-Mail: BWilson@mofo.com | E-Mail: DDoyle@mofo.com |
| E-Mail: DTabesh@mofo.com | E-Mail: SComer@mofo.com |
| E-Mail: EPai@mofo.com | E-Mail: BMKramer@mofo.com |

8

9

10

11

12

KURTIS MacFERRIN
APPLERA CORPORATION –
  APPLIED BIOSYSTEMS GROUP
850 Lincoln Centre Drive
Foster City, CA 94404
E-Mail: Kurtis.MacFerrin@appliedbiosystems.com

13

14

15

16

I declare under penalty of perjury that the foregoing is true and correct.

17

Executed at Chicago, Illinois, this 29th day of January, 2008.

18

19

_____

20

John R. Labbé

21

22

23

24

25

26

27

28

# EXHIBIT 35

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIFE TECHNOLOGIES CORPORATION;<br>APPLIED BIOSYSTEMS, LLC; INSTITUTE<br>FOR PROTEIN RESEARCH; ALEXANDER<br>CHETVERIN; HELENA CHETVERINA; and<br>WILLIAM HONE, | )<br>)<br>)<br>)<br>) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 09-706-RK |
| | ) | |
| v. | ) | |
| | ) | |
| ILLUMINA, INC. and SOLEXA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ILLUMINA AND SOLEXA'S FIRST SET OF INTERROGATORIES

Pursuant to Fed. R. Civ. P. 33, Defendants and Counterclaim-Plaintiffs Illumina, Inc. and

Solexa, Inc. (collectively, "Illumina") request that Plaintiffs and Counterclaim-Defendants Life

Technologies Corporation and Applied Biosystems, LLC answer the following interrogatories in

writing and under oath within thirty (30) days of service, in accordance with the definitions and

instructions below.

## DEFINITIONS AND INSTRUCTIONS

1.      "You," "Your," and "Yourself" means Plaintiffs and Counterclaim Defendants

Life Technologies Corporation and Applied Biosystems, LLC, and all of their parents,

subsidiaries, affiliates, predecessors, and successors, including, but not limited to, Agencourt.

2.      "Applied Biosystems" and "AB" means Plaintiff and Counterclaim Defendant

Applied Biosystems, LLC, and all of its parents, subsidiaries, affiliates, predecessors, and

successors, including, but not limited to Applera Corporation – Applied Biosystems Group.

3.      "Agencourt" means Agencourt Personal Genomics, a privately-held company

acquired by Applied Biosystems, LLC in 2006, and all present and former officers, directors,

agents, employees, representatives, attorneys and accountants thereof.

4.     "SOLiD™ System" means, inter alia, the SOLiD™ Analyzer, the SOLiD™

Instrument, Computer system, and SOLiD™ Software Suite, the SOLiD™ Emuls-O-Matic™

Device, Hydroshear® from Genomic Solutions®, the Covaris™ S2 System, SOLiD™ Library

Oligos, SOLiD™ Bead Deposition Kit, SOLiD™ Bead Enrichment Kit, SOLiD™ Buffer Kit,

SOLiD™ ePCR Kit, SOLiD™ Slide Kit, SOLiD™ Fragment Library Sequencing Kit, SOLiD™

Instrument Buffer Kit, SOLiD™ Mate-Paired Library Sequencing Kit, SOLiD™ Sequencing

Probes Kit, SOLiD™ DH10B Fragment Library Control Kit, SOLiD™ DH10B Mate-Paired

Library Control Kit, SOLiD™ Library Titration Reagent, SOLiD™ 1 System, SOLiD™ 2

System, SOLiD™ 3 System, SOLiD™ Instrument Control Software, SOLiD™ Analysis Tools,

SOLiD™ Experimental Tracking System, SOLiD™ Applications Interface, and the SOLiD™

Alignment Browser; products and methods relating to "cycled ligation sequencing" or

"massively parallel sequencing by stepwise ligation" that were made, used, offered for sale, or

sold by Agencourt prior to its acquisition by You; and any other associated equipment, kits,

reagents, or other materials that You have ever made, used, sold, or offered to sell for use with

any such products, including oligonucleotides, dye-labeled oligonucleotides, probes, dye-labeled

probes, vectors, restriction enzymes, endonucleases, ligation enzymes, software, hardware,

microparticles, beads, products relating to preparation of fragment libraries or mate-paired

libraries, PCR reaction components, adapters, primers, products relating to emulsion PCR and

bead enrichment, slides, deposition chambers, and flowcells.

5.     "Illumina Patents-In-Suit" means U.S. Patent Nos. 6,831,994, 6,654,505,

7,232,656, and 7,598,035.

6.     "Person" means an individual, sole proprietorship, partnership, firm, corporation,

association, governmental agency, or any other organization or entity.

7.     "Document" has the broadest possible meaning pursuant to Fed. R. Civ. P. 34(a)

and includes, without limitation, documents which may exist only in electronic form,

electronically stored information, electronic data including electronic mail, computer files,

backup media, and databases; files and file folders; books and their contents, whether printed or

recorded or reproduced by hand or any other mechanical process, or written or reproduced by hand or any other mechanical process; and all other tangible manifestations of communications whether or not claimed to be privileged or confidential or personal; namely, agreements, communications, including intra-company communications, correspondence, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations; diaries; forecasts; statistical statements; graphs, laboratory and engineering reports and notebooks, changes, plans, drawings, graphs, samples, prototypes and tangible things, photographs, films, pictures, and videotapes; minutes or records of meetings, including directors' meetings, minutes or records of conferences; expressions of statements or policy; lists of persons attending minutes or records of conferences; reports and/or summaries of interviews or investigations; opinions or reports of consultants' patent appraisals; opinions of counsel; records, reports or summaries of negotiations; brochures, pamphlets, advertisements, circulars, trade letters, packing material and notices, press releases; and litigation files and databases, including drafts of any document, revisions of drafts of any document, original and preliminary notes and marginal comments appearing on any document. A comment or notation appearing on any document, and not a part of the original document, is considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

   8.  "Describe" and "identify," when used in reference to:

     (a)  a person, means to state his or her full name; present or last known residential and business addresses and telephone number; present or last known position and/or business affiliation; and the nature and substance of each such person's knowledge and information relevant to the interrogatory;

     (b)  a proprietorship, partnership, firm, corporation, association, governmental agency, or other organization or entity, means to state its full name; its present or last known address; and the telephone number of its principal place of business;

     (c)  a product, means to state the product number, model number, SKU

number, serial number, type number, part number, trade name, or other designation customarily used in the trade to designate such a product and to distinguish it from others made or sold by or on behalf of the same or different producer;

(d)     a document, means to state the document's production number in this case, and, to the extent known, the type of document and its subject matter, the date, author(s) and recipient(s) of the document, the person(s) currently having possession, custody or control of the document, its production number in this case, and the identifying or descriptive code number, file number, title, or label of the document;

(e)     a communication, means to state its date and location(s), the type of communication (*e.g.*, meeting, letter, e-mail, *etc.*), the person(s) who participated in it or who was or were present during any part of it or who have knowledge about it, and the subject matter of the communication.

9.     "Communication" means any exchange or transfer of information between two or more persons or entities, whether written, oral, or in any other form, including electronic forms such as e-mail.

10.     As used herein, the words "and" and "or" are to be construed either conjunctively and disjunctively as necessary to bring within the scope of the interrogatory all responses that might otherwise be construed as being outside of its scope; the singular includes the plural and vice-versa; and any reference to the male gender includes the female gender.

11.     The terms "concerning," "related," and "relating" are used in their customary broad sense, and without limitation, include pertaining to, relating to, referring to, regarding, representing, embodying, illustrating, describing, discussing, mentioning, evidencing, constituting, summarizing, memorializing, and tending to support or to rebut, in any manner whatsoever and whether directly or indirectly.

12.     If You claim any privilege or immunity with respect to any information called for by an interrogatory, state the type of privilege or immunity claimed and the specific basis for the claim of privilege or immunity, and identify any document, communication, or other item to

which you claim a privilege or immunity with sufficient specificity to permit a determination by the Court of the propriety of such claim, and answer the interrogatory to the extent it calls for information to which You do not claim a privilege or immunity.

13.    These interrogatories are continuing in nature, and pursuant to Fed. R. Civ. P. 26(e), Your answers hereto require supplementation as and when additional responsive information, documents, electronically stored information and things become known or available to You, or when so requested prior to trial.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Separately, in claim-chart form and on a claim-by-claim and element-by-element basis for each claim of the Illumina Patents-In-Suit that You contend You are not infringing and will not infringe by making, using, selling, offering to sell, and importing Your SOLiD™ System, describe: the legal and factual bases for Your contention that You do not or will not infringe each claim literally or under the doctrine of equivalents, directly or indirectly (including, for each claim element which You contend is not contained in or performed by Your SOLiD™ System, your proposed construction of that element, the factual basis for each contention that Your SOLiD™ System does not contain or perform that element, and the factual basis for each contention that Illumina or Solexa are estopped (e.g., by the prosecution history of the Illumina Patents-In-Suit) from seeking a finding of infringement under the doctrine of equivalents with respect to that element); each document, electronically stored information and thing that You rely on in support of Your answer; each person, other than counsel, who furnished information or was consulted regarding Your answer (including the nature and substance of each such person's knowledge or information); and the three individuals affiliated with You, other than counsel, most knowledgeable regarding the subject matter of this interrogatory (including the nature and substance of each such person's knowledge and information).

### INTERROGATORY NO. 2:

Separately, in claim-chart form and on a claim-by-claim and element-by-element basis for each claim of the Illumina Patents-In-Suit that You contend is invalid, describe: the legal and factual grounds on which You contend that each such claim is invalid, including; each document, testimony, prior knowledge, public use, test, experiment, and data on which You will rely in support of each such contention; to the extent You contend any claim is invalid under 35 U.S.C.

§§ 102 or 103, where and how You contend each claim element is disclosed in the prior art,

including specific references to pages, claims, columns and/or line numbers (if applicable) in

each document supporting such contention; to the extent you contend any claim is invalid under

§ 102 (a), the earliest date by which You contend the invention was known or used by others in

this country, or patented or described in a printed publication in this or a foreign country; to the

extent You contend any claim is invalid under § 102(g), the alleged dates of conception and

reduction to practice of the alleged prior art, and Your basis for contending that the alleged prior

art was not abandoned, suppressed or concealed, and was diligently reduced to practice; to the

extent You contend any claim is invalid under § 103, why the claim would have been obvious,

including where the motivation to combine prior-art disclosures may be found and the level of

skill of a person having ordinary skill in the art to which the subject matter of the Illumina

Patents-In-Suit pertains at the time of the claimed inventions; to the extent You contend any

claim is invalid under 35 U.S.C. § 112, how one of ordinary skill in the art would have

purportedly found the claim indefinite, lacking an enabling disclosure, lacking sufficient written

description, or lacking any contemplated best mode; each document, electronically stored

information and thing that You rely on in support of Your answer; each person, other than

counsel, who furnished information or was consulted regarding Your answer (including the

nature and substance of each such person's knowledge and information); and the three

individuals affiliated with You, other than counsel, most knowledgeable regarding the subject

matter of this interrogatory (including the nature and substance of each such person's knowledge

and information).

## INTERROGATORY NO. 3:

Describe the circumstances under which You first became aware of each of the Illumina

Patents-In-Suit, including the person(s) employed by or associated with You who first became

aware of each of the Illumina Patents-In-Suit; the date(s) on which such person(s) first became

aware of each of the Illumina Patents-In-Suit; the step(s) taken to investigate whether making,

using, selling, offering to sell or importing Your SOLiD™ System infringes or would infringe a

valid and enforceable claim of any of the Illumina Patents-In-Suit; the person(s) who requested,

conducted and/or received the results of each such investigation and the dates thereof; a

summary of the substance and results of each such investigation; each communication and

document regarding such investigation(s), including written and oral opinions of counsel; each

document, electronically stored information and thing that You rely on in support of Your

answer; each person, other than counsel, who furnished information or was consulted regarding

Your answer (including the nature and substance of each such person's knowledge and

information); and the three individuals affiliated with You, other than counsel, most

knowledgeable regarding the subject matter of this interrogatory (including the nature and

substance of each such person's knowledge and information).

**INTERROGATORY NO. 4:**

    Identify each agreement by which You obtained or granted any right or immunity under

any patent claiming subject matter relating to DNA sequencing, and the royalty rates set forth in

those agreements; each document, electronically stored information and thing that You rely on in

support of Your answer; each person, other than counsel, who furnished information or was

consulted regarding your answer (including the nature and substance of each such person's

knowledge and information); and the three individuals affiliated with You, other than counsel,

most knowledgeable regarding the subject matter of the interrogatory (including the nature and

substance of each such person's knowledge and information).

## INTERROGATORY NO. 5:

For each product that You have made, used, sold, or offered to sell as part of Your

SOLiD™ System or for use with Your SOLiD™ System (including associated equipment, kits,

reagents, and other materials), identify the name and product number of each product, and

describe: Your sales and leases for each product, including for each product on a calendar-year

or annual basis, the number of units sold; dollar amount of sales; gross profits; net profits; fixed

costs per unit relating to or otherwise attributable or attributed to Your SOLiD™ System; the

variable costs per unit relating to or otherwise attributable or attributed to Your SOLiD™

System; each document, electronically stored information and thing that You rely on in support

of Your answer; each person, other than counsel, who furnished information or was consulted

regarding Your answer (including the nature and substance of each such person's knowledge and

information); and the three individuals affiliated with You, other than counsel, most

knowledgeable regarding the subject matter of this interrogatory (including the nature and

substance of each such person's knowledge and information).

## INTERROGATORY NO. 6:

Separately, as to each claim of each of the Illumina Patents-In-Suit that You contend in

your Answer should not result in an injunction against Your infringement, describe: the legal and

factual grounds on which You contend that an injunction should not be granted; each document,

electronically stored information and thing that You rely on in support of Your answer; each

person, other than counsel, who furnished information or was consulted regarding Your answer

(including the nature and substance of each such person's knowledge and information); and the

three individuals affiliated with You, other than counsel, most knowledgeable regarding the

subject matter of this interrogatory (including the nature and substance of each such person's

knowledge and information).

ASHBY & GEDDES

_____
Steven J. Balick (I.D. #2114)
Lauren E. Maguire (I.D. #4261)
Andrew D. Cordo (I.D. #4534)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE, 19899
Tel: (302) 654-1888
Fax: (302) 654-2067

_Counsel for Defendants/Cross-claimants
Illumina, Inc. and Solexa, Inc._

_Of Counsel:_

Kevin M. Flowers
Matthew C. Nielsen
Mark H. Izraelewicz
John R. Labbé
Cullen N. Pendleton
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
Suite 6300
Chicago, IL  60606
(312) 474-6300

Dated:  November 19, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of November, 2009, the attached **ILLUMINA AND**

**SOLEXA'S FIRST SET OF INTERROGATORIES** was served upon the below-named

counsel of record at the addresses and in the manner indicated:


Jack B. Blumenfeld, Esquire                                     HAND DELIVERY
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
Wilmington, DE  19801

Nicholas Groombridge, Esquire                              VIA ELECTRONIC MAIL
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153



Lauren E. Maguire

# EXHIBIT 36

of 37 CFR 1.116(b) will be strictly enforced after final action and that any amendment after a final action must include "a showing of good and sufficient reasons why the amendment is necessary and was not earlier presented" in order to be considered. The language of form paragraph 22.04 is appropriate for inclusion in the first Office action:

*¶ 22.04 Papers To Be Submitted in Response to Action - Ex Parte Reexamination*

In order to ensure full consideration of any amendments, affidavits or declarations, or other documents as evidence of patentability, such documents must be submitted in response to this Office action. Submissions after the next Office action, which is intended to be a final action, will be governed by the requirements of 37 CFR 1.116 after final rejection and 37 CFR 41.33 after appeal, which will be strictly enforced.

## 2260.01   Dependent Claims [R-2]

If ** >an unamended base patent claim (i.e., a claim appearing in the reexamination as it appears in the patent)< has been rejected or canceled, any claim which is directly or indirectly dependent thereon should be confirmed or allowed if the dependent claim is otherwise allowable. The dependent claim should *not* be objected to or rejected merely because it depends on a rejected or canceled patent claim. No requirement should be made for rewriting the dependent claim in independent form. As the original patent claim numbers are not changed in a reexamination proceeding, the content of the canceled base claim would remain in the printed patent and would be available to be read as a part of the confirmed or allowed dependent claim.

If a new base claim (a base claim other than a base claim appearing in the patent) has been canceled in a reexamination proceeding, a claim which depends thereon should be rejected as *>indefinite<. If a new base claim >or an amended patent claim< is rejected, a claim dependent thereon should be objected to if it is otherwise patentable and a requirement made for rewriting the dependent claim in independent form.

## 2261   Special Status for Action

*35 U.S.C. 305.  Conduct of reexamination proceedings.*

*****

All reexamination proceedings under this section, including any appeal to the Board of Patent Appeals and Interferences, will be conducted with special dispatch within the Office.

In view of the requirement for "special dispatch," reexamination proceedings will be "special" throughout their pendency in the Office. The examiner's first action on the merits should be completed within *1 month* of the filing date of the requester's reply (37 CFR 1.535), or within *1 month* of the filing date of the patent owner's statement (37 CFR 1.530) if there is no requester other than the patent owner. If no submissions are made under either 37 CFR 1.530 or 37 CFR 1.535, the first action on the merits should be completed within *1 month* of any due date for such submission. Mailing of the first action should occur within 6 WEEKS after the appropriate filing or due date of any statement and any reply thereto.

Any cases involved in litigation, whether they are reexamination proceedings or reissue applications, will have priority over all other cases. Reexamination proceedings not involved in litigation will have priority over all other cases except reexaminations or reissues involved in litigation.

## 2262   Form and Content of Office Action [R-7]

The examiner's first Office action will be a statement of the examiner's position and should be so complete that the second Office action can properly be made a final action.  See MPEP § 2271.

All Office actions are to be typed. The first Office action must be sufficiently detailed that the pertinency and manner of applying the cited prior art to the claims is clearly set forth therein. Where the request for reexamination includes material such as a claim chart to explain a proposed rejection in order to establish the existence of a substantial new question of patentability, the examiner may cut and paste the claim chart (or other material) to incorporate it within the body of the Office action. The examiner must, however, carefully review the claim chart (or other material) to ensure that any items incorporated in a statement of the rejection clearly and completely address the patentability of the claims. For actions subsequent to the first Office action, the examiner must be careful to additionally address all patent owner responses to previous actions. If the examiner concludes in any Office action that one or more of the claims are patentable over the cited patents or printed publications, the examiner should indicate why the claim(s) is clearly patentable in a manner similar to