**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

LIFE TECHNOLOGIES CORPORATION; )
APPLIED BIOSYSTEMS, LLC; INSTITUTE )
FOR PROTEIN RESEARCH; ALEXANDER )
CHETVERIN; HELENA CHETVERINA; and )
WILLIAM HONE, )     C.A. No. 09-706-RK
)
    Plaintiffs/Counterclaim Defendants, )
)
v. )
)
ILLUMINA, INC. and SOLEXA, INC., )
)
    Defendants/Counterclaim-Plaintiffs. )

### ILLUMINA AND SOLEXA'S OPPOSITION TO LIFE TECH'S MOTION TO STAY ILLUMINA AND SOLEXA'S PATENT COUNTERCLAIMS PENDING RE-EXAMINATIONS

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
Lauren E. Maguire (I.D. #4261)
Andrew D. Cordo (I.D. #4534)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Tel: (302) 654-1888
Fax: (302) 654-2067
sbalick@ashby-geddes.com
lmaguire@ashby-geddes.com
acordo@ashby-geddes.com

*Of counsel*:

Kevin M. Flowers
Matthew C. Nielsen
Mark H. Izraelewicz
John R. Labbé
Cullen N. Pendleton
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
Suite 6300
Chicago, IL 60606
Tel: (312) 474-6300
Fax: (312) 474-0448

*Counsel for Defendants/Counterclaim
Plaintiffs Illumina, Inc. and Solexa, Inc.*

Dated: May 3, 2010

{00403493;v1}

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF ADDITIONAL FACTS ....................................................... 2

III.  ARGUMENT ...................................................................................................... 4

    A.   Life Tech must show that it would suffer "a clear case of hardship or inequity" if a stay is not granted .............................................................. 4

    B.   Stays pending re-examination are not "routine" .................................... 5

    C.   The Court must pay "special heed" to Illumina's concerns ................... 5

    D.   Life Tech's motion is premature ........................................................... 6

    E.   Life Tech's delay in seeking re-examinations weighs against a stay ..... 7

    F.   A stay will not promote judicial efficiency or facilitate settlement ...... 9

        1.   A stay will not promote judicial efficiency ................................ 9

        2.   A stay will not facilitate settlement ......................................... 12

    G.   The delay caused by a stay will likely be much longer than Life Tech suggests .......................................................................................... 13

    H.   The delay caused by a stay would unduly prejudice Illumina ............. 15

    I.   Life Tech's other purported "efficiencies" do not justify a stay .......... 16

        1.   Re-examination is unlikely to assist this Court in claim construction ............................................................................. 17

        2.   Proceeding with Life Tech's invalidity case is unlikely to be wasteful ................................................................................... 17

        3.   The possibility that Illumina might amend its claims during re-examination does not justify a stay ...................................... 18

        4.   Estoppels resulting from the re-examinations do not justify a stay ......... 18

IV.   CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applera Corp. v. Thermo Electron Corp.,*
    04-1230 (D. Del.)............................................................................................... 12

*BarTex Research v. FedEx Corp.,*
    611 F. Supp. 2d 647 (E.D. Tex. 2009).................................... 5, 13, 14, 16, 19

*Baxter Int'l., Inc. v. Fresenius Med. Care Holdings, Inc.,*
    2008 WL 4395854 (N.D. Ill. Sept. 25, 2008) ...................................... 14, 15, 16

*Cognex Corp. v. Nat'l Instruments Corp.,*
    2001 WL 34368283(D. Del. June 29, 2001)............................................... 1, 5, 9

*Cooper Techs. Co. v. Thomas & Betts Corp.,*
    2008 WL 906315 (E.D. Tex. Mar. 31, 2008) ................................................ 15

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.,*
    498 F. Supp. 2d 734 (D. Del. 2007)....................................................... 10, 12

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.,*
    734 F. Supp. 656 (D. Del. 1990) .................................................................... 9

*eBay Inc. v. MercExchange, LLC,*
    547 U.S. 388 (2006)...................................................................................... 16

*Fresenius USA Inc. v. Baxter Int'l Inc.,*
    582 F.3d. 1288 (Fed. Cir. 2009)......................................................... 1, 5, 8, 13

*Gladish v. Tyco Toys, Inc.,*
    1993 WL 625509 (E.D. Cal. Sept. 15, 1993)................................................ 19

*Gold v. Johns-Manville Sales Corp.,*
    723 F.2d 1068 (3d Cir. 1983)..................................................................... 1, 5

*Nat'l Oilwell Varco, LP v. Auto-Dril, Inc.,*
    Case No. 5:09-cv-85-TJW (E.D. Tex. Jan 5, 2010)................................ 15, 17

*Network Appliance Inc. v. Sun Microsystems Inc.,*
    2008 WL 2168917 (N.D. Cal. May 23, 2008) ............................................. 14

*NTP, Inc. v. Research In Motion, Ltd.,*
    397 F. Supp. 2d 785 (E.D. Va. 2005) ............................................................ 4

# TABLE OF AUTHORITIES
*(Continued)*

**Page(s)**

*Pegasus Dev. Corp. v. DirecTV, Inc.,*
   No. 00-1020, 2003 WL 21105073 (D. Del. May 14, 2003) ........................................ 8, 18

*Roy-G-Biv Corp. v. Fanuc Ltd.,*
   2009 WL 1080854 (E.D. Tex. 2009) ................................................................ 17

*Safoco, Inc. v. Cameron Int'l Corp.,*
   2009 WL 2424108 24 (S.D. Tex. July 31, 2009) ............................................... 19

*Salazar v. Procter & Gamble Co.,*
   414 F.3d 1342 (Fed. Cir. 2005) .................................................................... 17

*SRAM Corp. v. AD-II Eng'g, Inc.,*
   465 F.3d 1351 (Fed. Cir. 2006) .................................................................... 17

*St. Clair Intellectual Property Consultants v. Sony Corp.,*
   2003 WL 25283239 (D. Del. Jan. 30, 2003) .................................................. 6, 15

*Tesco Corp. v. Weatherford Int'l, Inc.,*
   599 F. Supp. 2d 848 (S.D. Tex. 2009) ...................................................... 15, 19

*Thermo Finnigan v. Applera Corp.,*
   05-110 (D. Del.) ..................................................................................... 12

*Thermoplastics Co. v. Faytex Corp.,*
   970 F.2d 834 (Fed. Cir. 1992) ..................................................................... 17

*Viskase Corp. v. Am. Nat'l Can Co.,*
   261 F.3d 1316 (Fed. Cir. 2001) ..................................................................... 4

**Statutes**

35 U.S.C. § 112 ............................................................................................ 19

35 U.S.C. § 301 ............................................................................................ 19

35 U.S.C. § 315 ............................................................................................ 19

35 U.S.C. § 317(b) ....................................................................................... 17

35 U.S.C. § 318 ............................................................................................. 5

## I.    INTRODUCTION

Motions to stay patent cases pending re-examination of the patents-in-suit are not, and should not be, routinely granted. "[I]f routinely available to delay the judicial resolution of disputes, the procedure is subject to inequity, if not manipulation and abuse, through the delays that are inherent in PTO activity." *Fresenius USA Inc. v. Baxter Int'l Inc.*, 582 F.3d. 1288, 1305 (Fed. Cir. 2009) (Newman, J., concurring). Indeed, to justify a stay in this District, Life Technologies Corp. ("Life Tech") must show that it would otherwise suffer "a clear case of hardship or inequity." *Cognex Corp. v. Nat'l Instruments Corp.*, 2001 WL 34368283 at *1 (D. Del. June 29, 2001)[1] (citing *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075-1076 (3d Cir. 1983)).

In its motion, Life Tech failed (indeed, did not even attempt) to show that it would suffer undue hardship or inequity if its motion were denied. In contrast, staying Illumina's infringement case would unduly prejudice Illumina because it would likely deny Illumina its right to enforce its patents against Life Tech for 6 to 8 years (until the four re-examinations and their inevitable appeals are fully resolved).

Moreover, contrary to Life Tech's assertions, such a stay is unlikely to increase the efficiency of this litigation (for this Court or the parties), because the outcome of the re-examination will not assist this Court in construing Illumina's patent claims, because proceeding with Life Tech's invalidity case against Illumina's patents during the pendency of the re-examinations will not be wasteful, and because staying Illumina's case while allowing Life Tech to proceed with its case will likely discourage, rather than facilitate, settlement.

---

[1] Copies of all unpublished opinions cited in this brief are attached as exhibits to the Declaration of Mark Izraelewicz ("Izraelewicz Decl."), which is submitted concurrently herewith. Izraelewicz Decl., Exhs. R-AA.

For all these reasons, this Court should deny Life Tech's motion.

## II.   STATEMENT OF ADDITIONAL FACTS

The following facts supplement those set out in Life Tech's motion:

Illumina's counterclaim patents issued on the following dates: U.S. Patent No. 6,654,505 issued on November 25, 2003; U.S. Patent No. 6,831,994 issued on December 14, 2004; U.S. Patent No. 7,232,656 issued on June 19, 2007; and U.S. Patent No. 7,598,035 issued on October 6, 2009.[2]

At least as early as 2007, Life Tech and AB knew about three of Illumina's counterclaim patents (*i.e.*, the '505, '994, and '656 patents), and Life Tech's counsel apparently conducted an investigation into those three patents.[3]

Life Tech and AB knew about Illumina's fourth counterclaim patent (U.S. Patent No. 7,598,035) at least as early as when Illumina filed its infringement counterclaims in October, 2009, at which point Life Tech's counsel investigated that patent.[4]

Life Tech did not file its request for re-examination of U.S. Patent 6,654,505 until December 31, 2009, more than two years after learning of the patent.[5]

Life Tech did not file its request for re-examination of U.S. Patent 7,598,035 until January 13, 2010, more than two years after learning of the patent.[6]

---

[2] *See* Exhs. 4, 5, 6, and 7 of the Vacek Decl. submitted by Life Tech.

[3] *See* Life Tech's February 26, 2010 Response to Defendants' Interrogatory No. 3, part of "Plaintiffs' First Supplemental Response and Objections to Illumina and Solexa's Interrogatory Numbers 2, 3, 8, and 10," Izraelewicz Decl., Exh. A.

[4] *See id.*

[5] *See* "Life Technologies Corporation's Opening Brief In Support Of Its Motion To Stay Defendants' Patent Counterclaims Pending Reexamination Of Defendants' Patents-In-Suit" (Dkt. No. 50) (hereinafter "Life Tech's Opening Brief") at page 7 (table).

Life Tech did not file its request for re-examination of U.S. Patent 6,831,994 until February 19, 2010, more than two years after learning of the patent.[7]

Life Tech did not file its request for re-examination of U.S. Patent 7,232,656 until March 5, 2010, almost six months after learning of the patent.[8]

Life Tech and AB have produced more than one million documents (numbered CHET00000001 - CHET01182645), of which approximately 80% relate to Illumina's infringement counterclaims.[9]

In January 2010, Life Tech and AB told this Court that their document production would be completed by the end of February 2010.[10]

Illumina has produced more than 750,000 documents (numbered ILMN_0000001 - ILMN 0793238).[11]

The parties have exchanged and responded to interrogatories relating to Illumina's infringement counterclaims.[12]

The parties have invested substantial time and effort in narrowing the number of claim terms in the Illumina counterclaim patents that Life Tech argues should be construed by this Court.[13]

---

[6] *See id.*

[7] *See id.*

[8] *See id.*

[9] Izraelewicz Decl., ¶4.

[10] *See* Life Tech's "Motion To Revise Markman Claim Construction Schedule And Scheduling Orders" at 2 (Dkt. No. 36).

[11] Izraelewicz Decl., ¶5.

[12] Izraelewicz Decl., Exh. B, p. 4-24; Exh. C, p. 10-14; Exh. A, p. 2-8; Exh. D, p.2-5.

Illumina is the world leader in high-throughput "next-generation" DNA sequencing technology (through sales of its accused Genome Analyzer® DNA-sequencing machines), and Life Tech (through its subsidiary AB) is one of Illumina's chief competitors in this area (through sales of its accused SOLiD™ DNA-sequencing machines).[14]

Because Life Tech (and its subsidiary AB) are direct competitors with Illumina in the area of the accused technologies, in its infringement counterclaims Illumina plead (relative to each of its four patents) that it has "no adequate remedy at law" and that it will be "irreparably harm[ed]" unless and until Life Tech (and AB) are "enjoined by this Court."[15]

## III.   ARGUMENT

### A.   Life Tech must show that it would suffer "a clear case of hardship or inequity" if a stay is not granted

Life Tech is correct that this Court has discretion over whether to grant a stay pending re-examination.[16] Life Tech also correctly sets forth three factors that courts often consider in deciding whether to grant a stay.[17] Life Tech fails to disclose, however, that in this District, because the trial date in this case has already been set, Life Tech bears the burden to show that it would suffer "a clear case of hardship or inequity [absent a stay]" before such a stay can be

---

[13] Life Tech currently suggests that approximately eighteen such terms may require construction. *See* Izraelewicz Decl., Exh. E, p. 14-16.

[14] Izraelewicz Decl., Exh. F, p. 34.

[15] *See* "Illumina and Solexa's Joint Answer and Counterclaims" at ¶¶18-49 and "Prayer for Relief" (Dkt. No. 7).

[16] This Court, of course, is under no obligation to delay its own docket by yielding to ongoing PTO patent re-examinations. *See NTP, Inc. v. Research In Motion, Ltd.*, 397 F. Supp. 2d 785, 787 (E.D. Va. 2005) (citing *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001) ("[A] court is not required to stay judicial resolution in view of the reexaminations.").

[17] *See* Life Tech's Opening Brief at 8.

granted. *Cognex Corp.*, 2001 WL 34368283 at *1 (D. Del. June 29, 2001) (citing *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075-1076 (3d Cir. 1983)). Life Tech has failed to make such a showing, and its motion can and should be denied on this basis alone.

**B.      Stays pending re-examination are not "routine"**

Life Tech is also incorrect in suggesting that stays pending re-examination are somehow "frequent" or routine.[18] As Federal Circuit Judge Newman recognized in her concurrence in *Fresenius USA Inc. v. Baxter Int'l Inc.*, 582 F.3d. 1288, 1305 (Fed. Cir. 2009), stays are *not* routine because routinely granting stays when re-examination requests are filed on asserted patents would lead to inequity and potential abuse:

> [I]f routinely available to delay the judicial resolution of disputes, the [reexamination] procedure is subject to inequity, if not manipulation and abuse, through the delays that are inherent in PTO activity.

*See also BarTex Research v. FedEx Corp.*, 611 F. Supp. 2d 647, 652 (E.D. Tex. 2009) ("To [routinely grant such motions] would turn reexamination into an administrative process that must be completed before a suit for patent infringement may move forward.").

**C.      The Court must pay "special heed" to Illumina's concerns**

Perhaps most importantly, Life Tech failed to inform this Court that, when considering Life Tech's proposed stay pending *inter partes* re-examination, this Court should pay "special heed" to Illumina's concerns regarding the effects of delaying the litigation. *See Fresenius USA Inc.*, 582 F.3d. at 1305 n.1 (Newman, J., concurring) (citing 35 U.S.C. § 318). The parties here, Life Tech and Illumina, are direct competitors in the field of DNA-sequencing machines, and

---

[18] The string cite at n.4 of Life Tech's Opening Brief indicates that, at best, such a stay may have occurred once every two years in this District, which is hardly "frequent" given the number of patent cases pending in this District. *See* Izraelewicz Decl., Exh. G (*April 2009 Intellectual Property in Delaware Newsletter*, Morris Nichols Arsht & Tunnell LLP) at 4 ("There were 168 patent cases filed in the District of Delaware in 2008.").

each has patents allegedly infringed by the other's DNA-sequencing machine. Through its motion to stay, Life Tech seeks to unfairly tilt the legal (and commercial) playing field by moving forward with its own case on infringement in an effort to stop Illumina from selling its market-leading DNA-sequencing machines, while concurrently denying Illumina any opportunity to prevent Life Tech from selling its infringing DNA-sequencing machines for many years.

As explained further below, when "special heed" is properly given to the undue prejudice that Life Tech's proposed stay would cause Illumina, there is no question but that Life Tech's motion should be denied. *St. Clair Intellectual Property Consultants v. Sony Corp.*, 2003 WL 25283239 at *1 (D. Del. Jan. 30, 2003) (stay should be denied where it "would unduly prejudice or present a clear tactical disadvantage to the non-moving party").

### D.   Life Tech's motion is premature

Life Tech's motion should also be denied as premature. As Life Tech admits in its motion,[19] the Patent Office has not granted Life Tech's requests for re-examination of two of Illumina's four counterclaim patents. Life Tech speculates that the Patent Office will grant its requests to re-examine those two patents. The statistics that Life Tech cites suggest those requests are more-likely-than-not to be granted, but at this point it is still speculation to say they will be. Because the Patent Office has not granted two of Life Tech's four requests, staying Illumina's counterclaims at this time would be premature.

---

[19] Life Tech's Opening Br. at 6.

### E.     Life Tech's delay in seeking re-examinations weighs against a stay

Life Tech's delay in seeking the re-examinations of Illumina's counterclaim patents also

weighs against a stay. As Life Tech admitted in its responses to Illumina's interrogatories, Life

Tech has known about three of Illumina's four counterclaim patents since at least 2007:

> Plaintiffs' current information and belief is that Plaintiffs first learned of U.S.
> Patent No. 6,654,505 . . . in June 2007.[20]

> Plaintiffs' current information and belief is that Plaintiffs first learned of U.S.
> Patent No. 6,831,994 . . . in June 2007.[21]

> Plaintiffs' current information and belief is that Plaintiffs first learned of U.S.
> Patent No. 7,232,656 . . . sometime during 2007.[22]

Life Tech waited until *years* later, months after Illumina filed its counterclaims asserting

those patents and after this litigation was well underway, to seek re-examination of those

patents.[23] Yet now, Life Tech asks this Court to bar Illumina from getting its day in court on

those patents, for several *years*, based on those belated requests.

---

[20] Izraelewicz Decl., Exh. A, p. 9 (Life Tech's February 26, 2010 Response to Interrogatory No. 3).

[21] *Id.*

[22] *Id.* Life Tech included these statements in a set of "Revised" Supplemental Responses to Illumina's Interrogatories. In its original Supplemental Responses (served earlier the same day), Life Tech included the following after each such statement: "Scott Bortner, AB's in-house counsel, became aware of the patents at that time. Investigations occurred at the direction of AB's counsel, and such related information is protected from disclosure by the attorney-client privilege and attorney work product doctrine." Izraelewicz Decl., Exh. H, p. 9. The referenced "investigations" suggest that Life Tech gave Illumina's patents significant attention, and Life Tech's claim to the "attorney work product doctrine" to avoid disclosing any information about those investigations strongly suggests that Life Tech was anticipating litigation with Illumina involving those patents back in 2007.

[23] Life Tech learned of the fourth Illumina patent within a week of its issuance in October 2009. *Id.* ("Plaintiffs first learned of U.S. Patent No. 7,598,035 at the time of the filing of Defendants' counterclaims on October 13, 2009, which was within a week after the issuance of the '035 patent.").

Life Tech speculates about the probability that its proposed stay will yield real-world benefits for this Court and the parties, but the reality doesn't bear this out. For a real-world example of this, one need only look at the results of the stay in the *Pegasus* case before Judge Sleet in this District, a case on which Life Tech repeatedly relies in its brief.[24] Pegasus filed suit in 2000.[25] Judge Sleet granted the defendant's motion to stay the case in 2003.[26] In 2009, more than *six years* after the stay was entered, the Patent Office finally confirmed that many of the patent claims asserted by Pegasus were indeed valid.[27] The re-examinations are still not over, however, because Pegasus requested a rehearing relative to a few claims found to be invalid by the Patent Office.[28] In any event, contrary to the benefits that the accused infringer promised him when seeking the stay, Judge Sleet now faces, ten years after the case was filed, a resumption of Pegasus's patent-infringement case, in which many of the same patent claims that were first asserted ten years ago by Pegasus are still at issue, unchanged from when the stay was granted. There is every reason to believe that this Court will face the same unfulfilled promises many years from now if it grants Life Tech's request for a stay here.

Here, just as anticipated by Judge Newman in *Fresenius*, Life Tech seeks to unfairly leverage the indefinite delay that would inevitably result from a stay pending completion of its

---

[24] *Pegasus Dev. Corp. v. DirecTV, Inc.*, 2003 WL 21105073 (D. Del. May 14, 2003). (Life Tech submitted a copy of this decision as Exh. 14 to the Vacek Decl.)

[25] *See* Izraelewicz Decl., Exh. I (*Pegasus v. DirecTV* docket).

[26] *See id.*

[27] *Compare* claims listed as "asserted" in the *Pegasus* parties' July 5, 2005 Joint Status Report (Izraelewicz Decl., Exh. J) to claims listed as "confirmed" in the Reexamination Certificates dated February 2, 2009 (U.S. Patent 5,233,654), March 4, 2009 (U.S. Patent 5,109,414), and November 10, 2009 (4,965,825) (Izraelewicz Decl., Exhs. K, L, and M, respectively).

[28] *See* Izraelewicz Decl., Exh. N (Pegasus's Request for Rehearing dated March 19, 2010).

belatedly filed requests for re-examination – requests that it should have submitted to the Patent Office back in 2007 if it was truly interested in efficiency and encouraging resolution of the parties' disputes short of trial. *See also Cognex Corp.*, 2001 WL 34368283 (D. Del. 2001) at *2 ("The Court will not elevate [a party's] failure to address its concerns in a timely fashion to an example of hardship warranting a stay.") (quoting *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 659 (D. Del. 1990)).[29]

> **F.    A stay will not promote judicial efficiency or facilitate settlement**

Life Tech suggests that the objective of its motion is to promote judicial efficiency and facilitate settlement. The reality is that while any efficiencies that *might* have been gained from staying Illumina's infringement case based on timely filed requests for re-examination are, at this stage of the litigation, much diminished, and that a stay will *discourage*, not facilitate, settlement.

> **1.    A stay will not promote judicial efficiency**

We are less than six months from the close of fact discovery in this case. The parties have already produced and reviewed more than a million pages of documents relating to Illumina's

---

[29] Life Tech says that Illumina should not complain about Life Tech's delay in seeking re-examination of Illumina's four counterclaim patents because Illumina could have asserted three of those patents against AB in an earlier litigation. Life Tech's Opening Br. at 13-14. That argument is a complete red herring. As is evident from the caption in that case (*see, e.g.*, Vacek Decl., Exh. 33 at cover page), AB sued Illumina, and as is evident from Illumina's Answer (see *id.* at, *e.g.*, p. 4), AB was seeking ownership of three Illumina patents (U.S. Patent Nos. 5,750,341; 5,969,119; and 6,306,597). Those patents are not related to, nor are they directed to the same subject matter as, the '505, '994 and '656 patents at issue in this case. Illumina filed counterclaims for infringement of its '341, '119, and '597 patents in the prior case only because AB had already put those patents at issue in that case (*i.e.*, because if Illumina had not brought counterclaims regarding those patents already-at-issue at the time, AB might later have argued that those counterclaims should have been viewed as compulsory counterclaims).

infringement counterclaims.[30] The parties have served and responded to each others' interrogatories relating to Illumina's counterclaim patents, and have already invested substantial time to narrow (to eighteen) the number of claim terms in those patents that *Life Tech*, *not* Illumina, will ask this Court to construe.[31] And, as is self-evident from its re-examination requests, Life Tech has spent substantial time and effort to locate the prior-art patents and publications that it contends render Illumina's counterclaim patents invalid (and Illumina has spent substantial time analyzing those prior-art references). Consequently, a stay at this point will not save the parties nearly as much time and effort as Life Tech suggests.

A stay here would be tantamount to bifurcation of the trial on the competing infringement claims of the opposing parties.[32] This Court has previously observed that such an approach has been virtually unheard of. *See Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 498 F. Supp. 2d 734, 735 (D. Del. 2007) ("[Plaintiff] does not point to a single case in which a trial court granted bifurcation of counterclaims of infringement [of Defendant's patents]."). As explained in the *Crown Packaging* decision:

> In deciding whether one trial or separate trials will best serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay, the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation.
>
> * * *
>
> While Rule 42(b) suggests that bifurcation can be conducive to judicial expedition and economy, dividing the ultimate resolution of a dispute into separate trials

---

[30] At least 80% of the documents produced by Life Tech relate to Illumina's infringement counterclaims.  Izraelewicz Decl., ¶19.

[31] *See* Izraelewicz Decl., Exh. O.

[32] Here, the issues engendered by a stay (and its bifurcation effect) would result in additional inefficiencies for this Court, because given the many-years' delay inherent in re-examinations, this Court would have to prepare for and conduct two trials separated by many years.

> could inevitably lead to additional discovery, more pre-trial disputes, empanelling a second jury, deposing or recalling the same witnesses and the potential for multiple, additional post trial motions and appeals.

*Id.* at 736.

Contrary to Life Tech's representations, the subject matter underlying Plaintiffs' and Illumina's infringement (and invalidity) cases is related. Illumina is the world leader in high-throughput "next-generation" DNA sequencing technology (through sales of its accused Genome Analyzer® machines), and Life Tech is one of its chief competitors in this area (through sales of its accused SOLiD® DNA-sequencing machines). Each side has asserted that the "next-generation" DNA-sequencing technology sold by the other side infringes multiple patents, and each side has asserted that the patents of the other are invalid. In order to resolve the parties' competing infringement (and invalidity) claims, this Court and the jury will have to spend significant time and effort to get up-to-speed regarding the fundamentals of, for example, DNA biochemistry, how DNA is prepared for sequencing, methods used in DNA sequencing, and the market for the parties' "next-generation" DNA sequencing technologies.

This can be seen by comparing examples of the asserted claims in the parties' respective patents. See Izraelewicz Decl. Exh. BB (comparing asserted claims 1, 3, and 7 of Illumina's U.S. Pat. No. 7,232,656 and asserted claim 1 of Life Tech's U.S. Pat. No. 5,958,698). Although they use different words, these asserted claims are both directed to the manipulation and analysis of nucleic acids, such as DNA (e.g., "generating sequence reads" in '656 claims 1 and 7 and "detecting a nucleic acid sequence" and "screening to detect amplified nucleic acid product" in '698 claim 1). Consequently, the Court and jury will have to learn about the chemical structures and functions of DNA molecules and "genomes," as well as the methods, biochemical reactions, enzymes and other compounds that are used to "sequence" or "screen" them (such as DNA polymerase enzymes, enzymatic buffers, and nucleotide substrates). The Court and jury will also

11

have to learn about the specific physical conditions under which such biochemical reactions are carried out in the claimed inventions, in that they involve manipulations carried out on "immobilized" reactants or in "entrapped" amplification media (e.g., nucleic acid fragments "immobilized" or "arrayed" on a solid surface for analysis in '656 claims 3 and 7, and the "entrapped" mixture in '698 claim 1 that is subject to "amplification" and "screening").

If this Court grants Life Tech's motion to stay Illumina's infringement counterclaims, it will likely result in this Court having to convene two separate juries, each of which will have to spend significant time and energy to learn even the most fundamental aspects of these scientific areas, as well as the complexities of U.S. patent law regarding patent infringement, patent validity, and damages. It is beyond dispute that it would be much more efficient for a single jury, rather than two, to be put to these tasks. See *Crown Packaging Tech., Inc.*, 498 F. Supp. 2d at 737-38 (where there is some evidentiary overlap, it is most efficient to hold a single trial, before a single jury, on plaintiff's infringement claims and defendant's infringement counterclaims).[33]

### 2.    A stay will not facilitate settlement

Because Life Tech seeks only to stay Illumina's counterclaims, while continuing to pursue its own infringement claims against Illumina, this litigation is going to continue, and a trial will be held whether or not Illumina's infringement counterclaims are stayed. A stay under these circumstances would thwart the common-sense rationale behind allowing counterclaims – to permit the parties to efficiently resolve all of their disputes in a single action. As this Court is

---

[33] The inefficiency of holding two separate trials under similar circumstances was recognized by Judge Sleet in this District in two consolidated patent cases involving AB (Life Tech's subsidiary and a co-plaintiff here). In those cases, when AB moved to stay its competitor's patent-infringement claims pending re-examination, Judge Sleet stayed the *entire case* – including AB's *own* patent-infringement claims – pending the outcome of the re-examination. In so doing, Judge Sleet observed that such a stay was the "most practical and efficient way to proceed" in view of some legal and factual overlaps. *See* Izraelewicz Decl., Exh. P (Judge Sleet's orders entering stays in both *Applera Corp. v. Thermo Electron Corp.*, Civ. Action No. 04-1230 GMS (D. Del.), and *Thermo Finnigan v. Applera Corp.*, Civ. Action No. 05-0110 GMS (D. Del.)).

well-aware, the resolution of competing claims is often the driver for settlement of civil cases. Because a stay of Illumina's infringement counterclaims would eliminate the possibility that this litigation could result in a significant short-term downside for Life Tech (instead, that downside would not be possible until Illumina's patents emerge from re-examination many years down the road), Life Tech's requested stay would thus not only not facilitate settlement, it would likely *discourage* settlement.

### G.      The delay caused by a stay will likely be much longer than Life Tech suggests

Life Tech also significantly understates the delay that is likely to be caused by the proposed stay.[34] The most recent statistics from the U.S. Patent Office show that the average time to complete the first portion of an *inter partes* re-examination now stands at 36.5 months, and is growing longer with each passing month.[35]

Moreover, this number does not include the years that it takes to resolve the appeals filed by the losing party in a re-examination (first to the Board of Patent Appeals, and then to the Federal Circuit). *See Fresenius USA Inc.*, 582 F.3d. at 1306 (Fed. Cir. 2009) (Newman, J., concurring) ("Decisions on reexamination can be appealed to the Board and are subject to

---

[34] In its motion, Life Tech suggests that the Patent Office conducts *inter partes* re-examinations more rapidly when the involved patents are the subject of co-pending litigation. *See* Life Tech's Opening Br. at 14. But because 70% of the patents subjected to re-examination are also the subject of co-pending litigation (*see* Izraelewicz Decl., Exh. Q), the lengthy, ever-increasing average-time-to-completion for re-examinations suggests that the involvement of patents in co-pending litigation has had little, if any, impact on the length of re-examination proceedings.

[35] *See* Izraelewicz Decl., Exh. Q (U.S. Patent & Trademark Office, Inter Partes Reexamination Filing Data – March 31, 2010, http://www.uspto.gov/patents/stats/IP_quarterly_report_Mar_31_2010.pdf) (hereinafter "March 2010 PTO Inter Partes Reexamination Statistics"). Note also that the average length of an *inter partes* re-examination has increased to 36.5 months in 2010 (*id.*) from 28.5 months in 2008 (as discussed in the *BarTex* decision quoted below). This delay may become even longer as *inter partes* re-examinations grow even more popular.

judicial review. The PTO reports that the Board is still experiencing a heavy increase in appeals and the backlog of appeals.").

Life Tech also fails to disclose that the statistics it cites in its motion include the many instances where the patentee did not bother to contest the *inter partes* re-examination, thus leading to termination of the re-examination in short order. *See Network Appliance Inc. v. Sun Microsystems Inc.*, 2008 WL 2168917 at *3 (N.D. Cal. May 23, 2008) ("It is unclear whether these patent holders gave up because of a perceived inability to prevail on the merits of their claims or for other reasons."). These "no-contest" re-examination numbers artificially skew the statistics regarding re-examination time-to-completion downward (as well as the statistics regarding the likelihood that the re-examined patent will be wholly invalidated via cancellation of all of its claims). *See, e.g., BarTex Research*, 611 F. Supp. 2d at 651 (discussing Patent Office statistics as of 2008):

> Although the PTO reports that the average pendency of an inter partes reexamination is 28.5 months, if the patent holder decides to defend its rights, the process is likely to require an average of 43.5 months. *Id.* (citing Institute for Progress, *Reexamining Inter partes Reexam* (2008)). If the decision is appealed, it is estimated that the entire process will require an average of 78.4 months, although this estimate may be subject to change since there has never been an inter partes reexamination that has gone through the entire reexamination process, including appeal, and made it to completion.

*See also Baxter Int'l., Inc. v. Fresenius Med. Care Holdings, Inc.*, 2008 WL 4395854 (N.D. Ill. Sept. 25, 2008) ("Baxter has presented the Court with statistics contained in a study by the Institute for Progress that suggest that the average inter partes reexamination, including appeals, can be expected to last approximately *six and one-half years*, and *may take as long as eight years*.") (emphases added).

Given that Life Tech has not indicated that it would be willing to waive its right to appeal any adverse decisions by the Patent Office in its requested *inter partes* re-examinations of

Illumina's patents, it is likely that the resolution of those re-examinations (and the separate appeals therefrom) will take the 6.5 to 8 years discussed in the *Baxter* case (or even longer, given that the average time to complete the main phase of a re-examination has gone from 28.5 months at the time of the *Baxter* decision to 36.5 months since then).

### H.    The delay caused by a stay would unduly prejudice Illumina

The delay that would inevitably result from any stay pending re-examination would unduly prejudice Illumina, particularly given that Illumina and Life Tech/AB are competitors in the marketplace implicated by the patented technologies.[36] For example, a stay would indefinitely delay the possibility of Illumina obtaining an injunction to prevent ongoing infringement by Life Tech and AB.

Life Tech's motion should therefore be denied at least because it "would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *See Tesco Corp. v. Weatherford Int'l, Inc.*, 599 F. Supp. 2d 848, 852 (S.D. Tex. 2009) (denied stay pending *inter partes* re-examination because "Where the parties are direct competitors, a stay would likely prejudice the non-movant. . . . Even though the Court may eventually determine that Plaintiff's injuries from lost market share may be fully compensable in money damages, the prejudice from delayed discovery outweigh any mitigating effect these damages might have."); *Cooper Techs. Co. v. Thomas & Betts Corp.*, 2008 WL 906315, at *1 (E.D. Tex. Mar. 31, 2008) (where parties are direct competitors, a stay would prejudice the patent owner); *St. Clair Intellectual Property Consultants v. Sony Corp.*, 2003 WL 25283239 at *1 (D. Del. Jan. 30, 2003) (denying stay, in part because "this case… is about the injunction"); *Nat'l Oilwell Varco, LP v. Auto-Dril, Inc.*, Case No. 5:09-cv-85-TJW (E.D. Tex. Jan 5, 2010) (denying stay, in part because "[t]he parties

---

[36] *See* Izraelewicz Decl., Exh. F, p. 34.

are direct competitors and a denial of timely enforcement of either party's patent rights would indeed unduly prejudice that party."); *BarTex Research*, 611 F. Supp. 2d at 651 (a stay would be prejudicial to a patentee seeking an injunction, because "should [the defendant] be found to infringe ... damages alone may not fully compensate ... for a lengthy delay resulting from reexamination"); and *Baxter Intern., Inc. v. Fresenius Medical Care Holdings, Inc.*, 2008 WL 4395854, *5 (N.D. Ill. 2008) ("While the impending expiration of a patent is not necessarily grounds for denying a stay ... the prospect that Baxter's claim for injunctive relief may be rendered moot is an additional cost that weighs against the uncertain benefits of a stay.").

Simply put, Life Tech hopes to put off Illumina's infringement case for as long as it can so that it can realize as much profit as it can in the near term and deal with the consequences of its infringement of Illumina's patents as far in the future as possible. Illumina asks that the Court not reward this strategy. If Life Tech infringes even a single claim of Illumina's asserted patents, Illumina is entitled to relief.[37] If Life Tech has its way, Illumina will not be able to proceed further toward developing its case and having its day in court until what will likely be many years down the road when Life Tech's very last re-examination request has been decided. This would not be fair to Illumina or promote judicial efficiency.

## I.    Life Tech's other purported "efficiencies" do not justify a stay

Life Tech alludes to other so-called "efficiencies" that might be derived from a stay, but those are at best speculative, or simply illusory.

---

[37] In particular, Life Tech seeks to delay this litigation so it can erode Illumina's market share by selling its infringing DNA-sequencing technology until such time that the current technology is supplanted by the *next* "next-generation" technology. Illumina has therefore prayed for and would likely be entitled to a permanent injunction. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 393 (2006).

### 1.    Re-examination is unlikely to assist this Court in claim construction

Life Tech contends that the re-examinations will assist this Court with its constructions of the terms in Illumina's patents. That is unlikely, for several reasons. First, the Patent Office and this Court are required by law to use two different standards for construing a patent's claims (the Patent Office is required to give claim terms their broadest reasonable meaning, whereas this Court is required to construe claims consistently with the specification, prosecution history, prior art, and other claims). *Thermoplastics Co. v. Faytex Corp.*, 970 F.2d 834, 846 (Fed. Cir. 1992).

Second, the Patent Office's comments during prosecution are not necessarily dispositive regarding claim interpretation in the district courts. *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005).

Third, the Patent Office's claim construction is (far too often) found to be wrong, and district courts have been reversed for adopting the Patent Office's construction of a claim term. *See, e.g.*, *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1359 (Fed. Cir. 2006).

Finally, the PTO's process for construing claims in re-examinations can make claim construction more difficult when the patents are returned to the district court, because of the complications that re-examinations can introduce into file histories. *Nat'l Oilwell Varco, LP v. Auto-Dril, Inc.*, Case No. 5:09-cv-85-TJW (E.D. Tex. 2010); *Roy-G-Biv Corp. v. Fanuc Ltd.*, 2009 WL 1080854, *2 (E.D. Tex. 2009).

### 2.    Proceeding with Life Tech's invalidity case is unlikely to be wasteful

Life Tech suggests that proceeding with its invalidity case against Illumina's patents in this Court could be wasteful because the result could be contradictory to the result of the re-examinations on those patents. *See* Life Tech's Opening Br. at 4-5, 12. But that is not likely, because 35 U.S.C. § 317(b) mandates that if Life Tech were to fail in its invalidity case in this Court, that result would be binding in the re-examinations ("Once a final decision has been

entered against a party in a civil action . . . that the party has not sustained its burden of proving

the invalidity of any patent claim in suit . . . an inter partes reexamination requested by that party

or its privies on the basis of such issues may not thereafter be maintained . . . .") (and it is a near-

certainty that this Court will rule on Life Tech's invalidity case before any decision is reached in

the re-examinations).

### 3.   The possibility that Illumina might amend its claims during re-examination does not justify a stay

Life Tech overstates its argument that it would be a waste of time and effort to construe

claims that might be amended during re-examination. First, Life Tech overstates the likelihood

that the claims in Illumina's patents will be altered during the re-examination process. One need

only look to the results of the re-examinations at issue in the *Pegasus* case discussed above,

where many of the independent claims re-emerged from the re-examination unchanged.

Second, as Life Tech is well-aware, if claims do need to be narrowed to distinguish prior

art, such narrowing is often accomplished by simply *adding* a limitation via amendment, while

otherwise preserving the original language of the claim. Thus, it is unlikely that keeping to the

current schedule and construing the few terms in Illumina's patents (that Life Tech, not Illumina,

says need to be construed) would be wasteful in the long run.

### 4.   Estoppels resulting from the re-examinations do not justify a stay

Life Tech refers to certain estoppels to which it may be subject as a result of the re-

examinations.[38] But at best, these are narrow estoppels that apply only to limit defenses, in later

litigation, that are premised on prior-art patents and publications known to, or which should have

---

[38] Life Tech's Opening Br. at, *e.g.*, 3, 4, 11.

been known to, Life Tech.[39] See 35 U.S.C. § 301. As explained in *Gladish v. Tyco Toys, Inc.*, 1993 WL 625509, at *2 (E.D. Cal. Sept. 15, 1993), the district court is the only venue which can resolve additional defenses not at issue in any re-examination proceeding:

> The reexamination proceeding will not finally resolve all the issues in the litigation. Tyco has uncovered evidence of prior public use and prior conception which is material to a court's determination of validity, but which does not fall into the narrow categories the PTO considers on a request for reexamination, namely prior publications and patents. As a result, this court is the only forum for a complete consideration of Tyco's evidence of invalidity. . . . Tyco's other invalidity defenses, that the patents are invalid under Section 112, are beyond the scope of the re-examination.

Life Tech will not be subject to any estoppel relating to prior art not yet known to Life Tech (or about which Life Tech should have known), or to prior-art uses or offers for sale, or to any other invalidity defense that Life Tech chooses to raise at trial, such as the 35 U.S.C. § 112 defense identified in its interrogatory answers.[40] See, e.g., *BarTex Research*, 611 F. Supp. 2d at 651 ("[T]he estoppel provisions of 35 U.S.C. § 301 do not apply to newly discovered prior art or non-printed publications"). Also, Life Tech nowhere concedes that its infringing subsidiary, plaintiff AB, or any of its other co-plaintiffs would be subject to any re-examination estoppels. Unless and until it does so concede, it must be assumed that the other plaintiffs will contend that they are not subject to any such estoppels and that, if a stay is entered, they will contend they are free to raise any prior-art defense when trial is eventually held.[41]

---

[39] Such estoppels do not even arise until the re-examination and all appeals therefrom are fully concluded. *Safoco, Inc. v. Cameron Int'l Corp.*, 2009 WL 2424108, at *24 (S.D. Tex. July 31, 2009).

[40] *See* Izraelewicz Decl., Exh. A, p. 7.

[41] *See* 35 U.S.C. § 315(c) (estoppel applies to third-party requesters); *Tesco Corp. v. Weatherford Int'l, Inc.*, 599 F. Supp. 2d 848, 851-52 (S.D. Tex. 2009) ("[I]n this action, there are several [parties] who are not party to the reexamination proceeding. These [parties] will therefore not be precluded from advancing at trial the same invalidity arguments . . . presented during reexamination.")

## IV.    CONCLUSION

For the foregoing reasons, Illumina requests that Life Tech's motion be denied (or in the

alternative, that the Court stay the entire case pending resolution of the re-examinations).

ASHBY & GEDDES

*/s/Andrew D. Cordo*

Steven J. Balick (I.D. #2114)
Lauren E. Maguire (I.D. #4261)
Andrew D. Cordo (I.D. #4534)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Tel: (302) 654-1888
Fax: (302) 654-2067
sbalick@ashby-geddes.com
lmaguire@ashby-geddes.com
acordo@ashby-geddes.com

*Counsel for Defendants/Counterclaim
Plaintiffs Illumina, Inc. and Solexa, Inc.*

*Of counsel*:

Kevin M. Flowers
Matthew C. Nielsen
Mark H. Izraelewicz
John R. Labbé
Cullen N. Pendleton
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
Suite 6300
Chicago, IL 60606
Tel: (312) 474-6300
Fax: (312) 474-0448

Dated: May 3, 2010